GOFF v. THE HAWKEYE PUMP AND WINDMILL CO. ET AL.

62  691
111  675

62  691
132  406

1. **Corporations:** FALSE CERTIFICATES OF PAID UP STOCK: LIABILITY OF CORPORATION. Where a corporation, contrary to statute, but by the mutual agreement of its stockholders, issues certificates of paid up stock when only a *pro rata* portion has in fact been paid, this may be ground for a proceeding in the interest of the public to wind up the concern, but it is not ground for one of the subscribers to the stock, and a party to the unlawful undertaking, to have his contract of subscription set aside, and his *pro rata* payment refunded.

2. ——: SUBSCRIPTION TO STOCK: FALSE PROMISES: CANCELLATION OF SUBSCRIPTION. A subscriber to the capital stock of a corporation cannot have his contract of subscription set aside, and the amount paid thereon rfeunded, simply because the corporation, by its agents, represented that it would put a certain amount of working capital into the concern, and then failed to do so, when the subscriber well knew the condition of the corporation, and its lack of funds, and no specific method for raising the funds was agreed upon.

3. **Appeal to Supreme Court:** CERTIFYING RECORD: JURISDICTION. The trial court does not, because an appeal has been taken, lose its jurisdiction to do anything necessary for the presentation of the case in this court.

*Appeal from Pottawattamie Circuit Court.*

THURSDAY, JANUARY 31.

ACTION in equity to set aside a contract of subscription to the capital stock of the defendant, The Hawkeye Pump and Windmill Co. There was a decree for the plaintiff. The defendant appeals.

*M. P. Brewer*, for appellants.

*Sapp & Lyman*, for appellee. ·

ADAMS, J.—The plaintiff sets up two grounds for setting aside the contract fraud and failure of consideration. The fraud is alleged to consist in certain promises as to what the company would do, which promises it has not fulfilled. The failure of consideration is alleged to consist in the failure to fulfill the promises. The court found that the consideration of the subscription had failed, and decreed that the contract be canceled, and that the property which the plaintiff gave in payment for the stock be restored to him.

The company, as its name indicates, is a corporation organized for the manufacture of pumps and windmills. It is the owner of a patent right. The plaintiff is a mechanic. As such he entered into a contract with the company to manufacture for it one hundred pumps and windmills. While performing his contract with the company, he became desirous of acquiring an interest in the company; and the company having the power to issue more stock than had been subscribed, the plaintiff was allowed to take twenty-four shares, of the nominal value of $2,400. He gave therefor property of the estimated value of $1,200, and the stock was issued to him as full-paid stock.

The contract for the manufacture of one hundred pumps and windmills was by mutual consent abandoned, and the company itself entered upon the manufacture, employing the plaintiff as master mechanic in the business, at a salary of $1,000 a year. The company, in proceeding with the business, incurred some indebtedness, though we think not a very large one. But, whether it was large or small, the company became somewhat embarrassed. It had never had much money, the stock which had been subscribed having been paid for in property. In view of the company's embarrassment and want of success, the plaintiff became desirous of rescind-

ing his contract of subscription, of restoring his stock to the company, and recovering the property which he had given in payment for it. For that purpose he brought this action, averring that, at the time of his contract of subscription, one Evans and one Walker, stockholders, "acting for and on behalf of the company, represented and promised the plaintiff that the said company would   *   *   *   *   put into said company the sum of $10,000 as working capital." He also avers that the company has failed to put in said sum. Its alleged promise and failure in this respect constitute the fraud and the failure of consideration complained of.

The record discloses some very objectionable conduct on the part of the original stockholders, but we cannot for this reason depart from the proper rules of law respecting the rights and liabilities of stockholders in incorporated companies.

However objectionable may have been the conduct of the original stockholders, and however worthy of condemnation, we are not able to see how it gives the plaintiff any rights as against the company.

Many considerations have been urged in this case which cannot properly be deemed to have any legal bearing upon it. Evidence was introduced upon both sides in regard to the value of the patent right. This evidence is conflicting. One witness testified that it is worthless, and two that it is valuable. But we do not deem the question a material one. It does not seem to be involved in the issues as made by the pleadings, and, besides, if the pleadings presented the question, we could not hold that it is material, unless the law is that whoever subscribes for stock in an incorporated company, which holds among its assets a patent right, may be released from his subscription ' and placed *in statu quo*, if the patent right proves upon trial to be worthless; and no one would claim that that is the law.

Another thing urged upon our attention is the company's lack of money. At the time the plaintiff subscribed for his stock, the company does not appear to have had much money,

and does not appear to have had occasion up to that time to employ much money. It had not itself been engaged in manufacturing. After it entered upon the business of manufacturing, its needs seem to have become greater. But all this question and discussion as to the amount of money which the company had at the time the plaintiff subscribed for his stock seem to us to be wholly immaterial. No such question is presented in the pleadings, and, besides, there was no concealment in regard to the assets of the company, and there is no pretense that the plaintiff did not know precisely what they were.

Another thing urged upon our attention is, that no part of 1. CORPORA-  the stock subscribed for by any one was fully paid TIONS: false  up, and yet it was issued as fully paid. There certificates of  paid up stock:  seems to have been a mutual understanding that, liability of  upon the payment of fifty cents on a dollar, and corporation.  that, too, in property, stock should be issued as fully paid.

Under the statute, articles of incorporation must fix the amount of capital stock, and notice of the amount authorized must be given to the world. Code, § 1063. The public has a right to assume, where the stock of a company has all been issued as full-paid stock, that it has been paid for in full in money, or in property at a fair value. The mode of doing business adopted in this case has for its object to make a show of capital and responsibility not in fact possessed. But, while this might be ground for a proceeding in the interest of the public to wind up the company, it is not ground upon which the plaintiff can predicate his right to relief. He presents no such question in his petition, and, besides, he not only knew upon what basis stock had been subscribed and paid for, but he subscribed and paid for his stock upon the same basis.

We have said this much in regard to the questions discussed by counsel, which appear to us to be foreign to the is- 2. ———: sub-  sues and immaterial in every respect. We re- scription to  stock: false  turn now to what the plaintiff has actually aver- promises:  cancellation  red in his petition as a ground of relief; and that of subscrip-  tion.  is, that two of the stockholders, "acting for and

on behalf of said company, represented and promised the plaintiff that the said company would * * * * put into said company the sum of $10,000 as working capital." This allegation the company denied.

The plaintiff introduced evidence showing that the company appointed stockholders Evans and Hendric as a committee to negotiate with him. The stockholders alleged to have made the promise in behalf of the company were Evans and Walker. Two witnesses testify to the alleged promise, and three deny it.

We think that there was some talk, at least on the part of certain stockholders, of procuring additional subscriptions to stock, and raising more money in that way. There is a little evidence tending to show that the original stockholders at one time contemplated advancing some money to the company for its use.

The plaintiff seems to have no theory whatever as to how the company was to obtain $10,000. Sometimes we might infer from the argument of his counsel that his theory is that the company already had the money, and that the only question was as to using it as working capital. At other times they deny that the company ever had any money.

If the company already had the money, then the question pertained merely to the mode of conducting the business. If it had not the money, it could obtain it only by giving an equivalent in some form. The failure to obtain it, then, was not in our opinion a fraud, nor a failure of consideration of the plaintiff's contract of subscription to stock. If the company had borrowed $10,000, the plaintiff's stock might have been worth more, and might have been worth less. If they were proceeding with a worthless patent, as the plaintiff claims, his stock would doubtless, by the incurment of such indebtedness, have been worth less. Not only would the company have been obliged to repay it, but the plaintiff himself, as his stock was in fact only half paid, might perhaps have been called upon for the balance. If the company

Goff v. The Hawkeye Pump and Windmill Co. et al.

and the enterprise are in the condition in which he claims they are, we think that he ought to be thankful that the company, by doing so little, has involved itself so little. We think the decree of the circuit court cannot be sustained.

II. The appellee claims that the record was not certified until after the appeal, though within six months, and that the court below had no jurisdiction to certify the record after appeal was taken. But we think that the court below does not, by reason of an appeal being taken, lose its jurisdiction to do anything necessary for the presentation of the case in this court.

3. APPEAL to sup eme court: certifying record: jurisdiction.

REVERSED.