No. 1,084.

JEREMIAH W. SULLIVAN, Respondent, *v.* THE TRIUNFO GOLD AND SILVER MINING COMPANY, Appellants.

Practice.—Former Action.—Where the alleged new fact existed at the com-mencement of a former action in which the point in issue was the same, and the plaintiff neglected to avail himself of it, he is not entitled to set it up in a sub-sequent action.

Corporation—Debts of a.—The debts of a corporation, incurred in the trans-action of its legitimate business, are included among its "proper and legal expenses."

Idem—Purchase by Agent of the Indebtedness of.—The purchase of the claims against a corporation by its agent, although acting without authority in making the purchase, does not necessarily relieve the corporation of its indebt-edness, but may substitute the agent in place of the original holders to the extent of the amount expended in the purchase of the claims.

Idem—Sale of the Property of.—The ownership of property is not essential to the existence of a corporation, nor is a corporation dissolved by the sale of its property.

Idem.—Dissolution.—The Court cannot treat a corporation as already dissolved because its condition or business arrangements are such that it will be necessary or proper for it to institute proceedings for its dissolution.

Idem.—Sale of Stock Under an Assessment.—Injunction.—Whether a stock-holder, whose stock is about to be sold under an assessment which he alleges to be illegal and void, would suffer such injury by the sale of his stock as would nti-tle him to relief by injunction in a Court of equity, not decided.

*Wilson & Crittenden,* for Appellants.

The assessments referred to appear, by the complaint, to have been lawfully and properly levied to pay the legal and

(T.)

proper expenses of the company. (*Sullivan and Ryan* v. *Triunfo G. and S. Mining Co.* 29 Cal. 585 ; Stats. 1863–4, p. 402.)

The question as to the legality of the assessment of the 6th of July, 1865, is *res adjudicata* under the decision referred to.

The assessment of the 31st of October, 1865, was levied pending the injunction on the first assessment, and was therefore lawful. (Stats. 1863–4, p. 402, Sec. 2.)

The assessments having been lawfully made and levied, the plaintiff became indebted in a fixed amount to the company. That debt of the plaintiff was, and still remains, an asset of the company. The company might maintain an action for that debt, or proceed to collect it by the sale of plaintiff's delinquent stock. (*Northern R. R. Co.* v. *Miller,* 10 Barb. 261 ; *Herkimer M. and H. Co.* v. *Small,* 21 Wend. 273, S. C. 2 Comst. 330 ; *Hartford and N. H. Co.* v. *Kennedy,* 12 Conn. 500 ; *Goshen Turnpike Company* v. *Harting,* 9 Johns. 217 ; *Renssellaer and Wash. Pl. R. Co.* v. *Barton,* 16 N. Y. R. 457 *et seq; Spear* v. *Crawford,* 14 Wend. 20 ; *Ang. & Am. on Cor.* Sec. 549; *Henry et al.* v. *Vermillion and Ash. R. R. Co.* 17 Ohio, 189.)

All other stockholders paid up their assessments. The plaintiff is the only delinquent. He seeks an advantage over all the other stockholders who have paid, and his position is unfair, unjust and inequitable towards his co-stockholders. He is bound to pay his assessment as his contribution, and if not needed for debts and expenses it should go in proper proportion to the stockholders as a dividend.

The plaintiff's understanding that he would be released from his assessments is not shown to be on any rational basis. The facts do not justify any such understanding, and no agreement to that effect is shown.

*Second*—Trustees have no right or power to dissolve the corporation. The stockholders alone can do that by a two third vote, in the manner pointed out by statute. The corporation is even then not dissolved until the County Judge, on the proper proceedings, "shall enter the order declaring it dissolved." (1 Hittell's Dig. 955.)

The corporation exists by virtue of its organization under this same Act. (*Id.* 935.)

It existed immediately on filing the proper certificate, before it had acquired any property, and will exist after it has parted with all its property, It may not have a particle of property, and yet it may owe debts which it should levy assessments to pay. It may not owe a dollar, and yet have debts which it ought to collect before dissolution. (*Henry* v. *Vermillion and Ash. R. R. Co.* 17 Ohio, 190.)

The injunction granted by the Court below, in fact, in effect, "suspends the general and ordinary business of the corporation." The Court, or Judge, had no power to grant it *ex parte*. (Practice Act, Sec. 117.)

The plaintiff has a perfect remedy at law. By a notice of the sale he saves his stock, if it is not legally sold; the buyer would get no title at all. No irreparable injury can ensue. (See *Selover* v. *Russ Am. Co.* 7 Cal. 266, and cases cited by counsel, p. 269; *Curtis* v. *Sutter*, 15 Cal. 263; *Dewitt* v. *Hays*, 2 Cal. 469; *Gregory* v. *Hay*, 3 Cal. 334; *Waldron* v. *Marsh*, 5 Cal. 120; *Merced M. Co.* v. *Fremont*, 7 Cal. 322; *Burnett* v. *Whitesides*, 13 Cal. 157; *Branch Turnpike Co.* v. *Supervisors Yuba Co.* 13 Cal. 190; *Coker* v. *Simpson*, 7 Cal. 342; *Smith* v. *Maine Boys T. Co.* 18 Cal. 111.)

*Thompson Campbell* and *Chas. Wittram*, for Respondent.

*First*—The order restraining the sale of respondent's stock should not be vacated, because the complaint shows that the two assessments were not levied "for the purpose of paying the proper and legal expenses of such corporation."

The simple question now presented is, does the plaintiff, in his present action, present a *new fact?* It is contended that the allegation, that the assessment *was not levied* "for the purpose of paying the proper and legal expenses of such corporation," is a *new fact.*

It is now made to appear that the trustees did not have the power to do what they had done, and this allegation, we say, is a new fact, not litigated or adjudicated in the other case, and which is now set up for the first time.

After the injunction in that case was dissolved, it was competent for the plaintiff to have amended his complaint, by adding new matter, and a fresh injunction might then have been awarded. (*Vide* Hoffman's Pro. Rem. p. 375.)

The Court may renew an injunction after a dissolution, notwithstanding the order of dissolution may have been affirmed on appeal; but such power can only be exercised upon new facts presented, either by petition or supplemental bill, or, as in the present case, by a new bill. (*Vide* 1 Clark's R. p. 505; Hoffman's Pro. Rem. p. 376.)

In regard to the second assessment, no question of *res judicata* is or can be raised; but the point is distinctly made, that it was not levied "for the purpose of paying the proper and legal expenses of such corporation."

*Second*—Conceding that a debt has been contracted, "for the purpose of paying the proper and legal expenses of such corporation," the trustees have no power to collect any such indebtedness from the stockholders by the summary process of assessment. (Constitution of California, Art. IV, Secs. 31, 32 and 36.)

If an agent of a corporation, during his agency, purchases claims against the corporation, the debt as against the corporation is extinguished. Brooks, as agent of the corporation, could not buy up claims against the company and maintain suits on them. (22 Penn. R. p. 324.)

An agent cannot create such relations as to place himself in an attitude of hostility to his principal. (8 Watts' R. p. 93; 1 Penn. R. p. 223; 1 Rawle's R. p. 330.)

The purchase of a debt against the company by Brooks, while acting as the agent of the company, was an extinguishment of the debt. (22 Penn. R. 324.)

It is well settled, that a corporation has not the power, as incident to it at common law, to assess, for its own use, a sum of money on the corporators, and compel them, by action at law, to pay the same. (*Ft. E. and Ft. M. P. R. R. Co.* v. *Payne*, 17 Barb. 574.)

When a statute gives a new power, and, at the same time, provides the means of executing it, those who claim the right to exercise that power, can execute it in no other way.

(*The A. and M. T. Corporation* v. *Goold,* 6 Mass. 40; *Franklin Express Co.* v. *White,* 14 Mass. 289.)

So where, by statute, a power to enforce the payment of assessments by sale of the shares, exclusively, existed, a by-law, giving an action against a stockholder for any deficiency after the sale, was held repugnant to the statute and void. (Angell and Ames on Corporations, 6th ed. Sec. 334; *Jay Bridge Co.* v. *Woodman,* 31 Maine, 570.)

*Third*—The law is well settled, that to make a valid sale of the entire property of a corporation, the unanimous assent of all the stockholders is indispensable. (*Kean* v. *Johnson et al.* 1 Stock. R. 401; *N. O. J. and G. N. R. R. Co.* v. *Harris,* 27 Miss. 517; *Abbott* v. *The Hard Rubber Co.,* 11 Abb. Pr. R. 204; Angell and Ames on Corporations, 6th ed. Sec. 613.)

The Courts will treat acts of a corporation, that are equivalent to a dissolution, so far as the rights of third parties are concerned, as a dissolution of the corporation. (*Slee* v. *Bloom,* 19 Johns. 456; *People* v. *Bank of Hudson,* 6 Cowen, 219; *Bank Commissioners* v. *Bank of Brest,* Harr. Ch. R. 106; *Briggs* v. *Penniman,* 8 Cowen, 387.)

The sale by the company of its mines, was a sale of property essential for its active existence—such sale entirely destroying the stock of the company. (30 Penn. R. 49.)

*Fourth*—The complaint does not charge the actual dissolution of the corporation, but it does charge that the corporation has done acts that are equivalent to a dissolution.

After a corporation has abandoned the entire and sole object for which it was created, what debts can it incur that will be binding on the stockholders?

If the company, by its own acts, is disqualified to prosecute its lawful business, it follows, as a matter of course, that it cannot, legally, contract any further indebtedness.

*Fifth*—Under the law, it is plain that when stock is once sold, no matter how great the irregularity may be, either the stock itself is irretrievably gone from the owner, or the assessments must be paid. It is to prevent this very condition of things, that the plaintiff seeks the protection of equity; that he seeks, by the writ of injunction, to prevent

.the happening of an act, which, if permitted to take place, will inflict upon him, not only an irreparable, but an irremediable injury.·

, *Sixth*—The general rule is, that where third persons are injured by the neglect of a known agent to discharge the duties of his agency, *respondeat superior;* and in such cases the action must be brought against the principal. (Angell and Ames on Corporations, 6th ed. Sec. 312.)

· The stockholders standing in the relation of *cestuis que trust* to the trustees, their power to see to the proper execution of the trust, cannot be questioned. (*Verflauk* v. *Mercantile Insurance Co.* 1 Ed. Ch. R. 87.)

. A banking or monied corporation, even after all its visible· property is sold and disposed of, may call in unpaid subscriptions to its capital stock, and still continue its business.· But a mining corporation has no such alternative; and when its entire mining property is disposed of, for all practical· purposes, it ceases to exist. The corporation ceases to actively exist, for the plain reason that there is nothing left for it to act on. (2 Kyd. on Corp. 467.)

· RHODES, C. J., delivered the opinion of the Court :

In *Sullivan* v. *Triunfo Gold and Silver Mining Company* (29 Cal. 585), the question of the legality of the first assessment mentioned in the complaint, the one which was levied July 6, 1865, was considered, and it was held to be legal; and it is claimed by the defendants that that question is *res adjudicata* by virtue of that decision.   The plaintiff insists, that in this case, he has stated a new fact, which did not· appear in the former action; that it was not averred in the complaint in that case, but in this, that the assessment was not levied for the· purpose of paying the proper and legal expenses of the corporation.   It is averred, in each case, that the assessment was illegal and invalid, and the ground. upon which the assessment was contested in the former case ; was, that it was levied for the purpose of paying debts con-. tracted by the trustees, exceeding the limit prescribed by the by-laws of the company.   This is an objection to the ;

assessment, or a fact tending to show the ultimate fact in issue, the illegality of the assessment. What the plaintiff now claims as a new fact, is but a new objection to the assessment, or, at most, another probative fact tending to prove the ultimate fact of illegality. The fact affirmed on the one side, and denied on the other, was that the assessment was illegal; its illegality was the point of the issue. The issue might depend upon one or more than one fact, and if upon several facts, it was incumbent on the party who would claim their benefit, to present them in support of the issue. Were this not the rule, the plaintiff might maintain as many actions to enjoin the collection of the assessment, as there were facts which severally showed the invalidity of the assessment. The alleged new fact existed at the time of the commencement of the former action, and the plaintiff having neglected to avail himself of it then, is not now entitled to set it up, as a new ground of illegality of the assessment.

Some of the grounds upon which the second assessment is resisted will be noticed.

The fact that all of the former assessment had not been paid, is not a valid objection, for the collection of it was restrained by injunction when the second was levied. The statute makes that an exception to the rule forbidding a second assessment while the first remains unpaid.

The plaintiff claims that the authority to levy assessments is found in the Act of April 4, 1864 (Stats. 1863–4, p. 402); and the defendants rely on the Act of March 5, 1861 (Stats. 1861, p. 41). The defendants' position is, that the Act of 1861 is special, and applies, as the title expresses, to "corporations organized in this State for the purpose of mining out of this State," and the plaintiff contends that the Act of 1861 was repealed by the Act of 1864, and that assessments were to be levied according to the provisions of the latter Act. We see no way of escaping the conclusion that the latter repealed the former Act. The Act of 1864 is, in effect, amendatory of the first chapter of the Act concerning corporations, and is applicable to all corporations "formed

under the general laws of this State." It is urged that the
class of corporations mentioned in the Act of 1861 was
taken out of the operation of the general Act, so far as
assessments are concerned. This is undoubtedly true. But
the Act of 1853, concerning corporations for manufacturing,
mining and other purposes therein mentioned, and, it is
believed, all Acts regulating the organization, etc., of the
different classes of corporations, either expressly or by ref-
erence to other Acts, provided for the levying of assessments;
and, should it be held that the Act of 1864 has no operation,
except in case where special provision had not been made,
the result would be that the Act of 1864 would have no
operation. It is proper to add that the Act of March 26,
1866, (Stats. 1865-6, p. 458), repeals and takes the place of
the Act of 1864. We express no opinion as to whether the
provisions of the Act are applicable to calls or assessments
for subscription to the capital stock. The question does not
arise in this case, for we infer from the complaint that the
stock was issued in the usual mode in mining corporations;
that is, the stock was issued to the owners of the mine in
proportion to their several interests therein. If the corpora-
tions mentioned in the Act of 1861 can claim exemption
from the Act of 1864, it is impossible to see why all mining,
railroad, insurance, turnpike road, and all classes of corpo-
rations, for which provision is specially made respecting
assessments, may not also claim the same exemption.

The Act of 1864 provides that "the trustees of any cor-
poration formed under the general laws of this State shall
have power to levy and collect, for the purpose of paying
the *proper and legal expenses* of such corporation, assess-
ments on the capital stock thereof, in the manner and form
and to the extent hereinafter provided, and not otherwise."

The plaintiff contends—and his case depends mainly
upon the proposition—that "the proper and legal expenses"
of the corporation cannot be held to mean or include the
debts of the corporation. This construction is too narrow.
Instead of aiding in the formation and operation of corpora-
tions, it would most effectually prevent their organization,
and, in most cases, defeat their operations. In common

speech and in contracts, the term *expenses* signifies not only
the cost of contemplated services, materials, etc., but also
the charges for such as have been performed or furnished.
If the charges were not paid at the time the services were
performed, or the materials furnished, a debt was created,
but whether paid or not, they are properly denominated as
expenses.  We speak of the expenses of an undertaking,
whether the undertaking is merely contemplated or is fully
performed, and whether the costs and charges were paid in
advance, or upon performance, or remain unpaid.   In these
senses the term is employed in statutes, and its precise sig-
nification in each case must be ascertained from the context.
In the statute before us, it includes debts which have
accrued, as well as costs and charges of the contemplated
business and operations of the corporation.   Were debts
incurred, altogether excluded from the definition of the term
expenses, the corporation would not have power to levy an
assessment to pay the costs of organization or of opening
the corporation books, etc.   The construction contended for
by the plaintiff, would make it incumbent on the corpora-
tion to raise in advance the means to carry on the ordinary
business of the corporation, or assume the risk of becoming
insolvent when the work was performed.   The statute pro-
viding for the organization of corporations, contemplates
that the corporations will incur debts in the transaction of
their ordinary business, and it could not have been the
intention of the statute, to deprive corporations of the power
to raise from the stockholders the means with which to
discharge such debts.   It can make no difference to the
stockholder, whether he is assessed before the work, on
account of which the debt is contracted, is commenced, or
after its completion.

It is alleged that the indebtedness, for the satisfaction of
which the assessments are attempted to be enforced, is an
alleged indebtedness to Brooks, the agent of the corpora-
tion, on account of the purchase by him of certain claims
against the corporation; but it is insisted that such claims
are not subsisting claims against the corporation, because
they were extinguished by the purchase thereof by Brooks

as such agent. But such purchase did not extinguish the claims, unless it was made in violation of his duties or instructions. If he was empowered to make the purchase, they still subsisted as claims against the corporation, unless the corporation furnished or refunded to him the purchase money. Assuming that he acted without authority in effecting the purchase, while it may be conceded that the purchase extinguished the *claims*, it does not necessarily follow that it relieved the corporation of indebtedness. The corporation may thereby have become indebted to the agent, for the money expended in the purchase of the claims.

The sale of the mines, etc., did not dissolve the corporation. The ownership of property is not essential to the existence of a corporation. The general law provides the mode in which a corporation may be dissolved; but the Court cannot treat it as already dissolved, because its condition or business arrangements are such that it will be necessary or proper for it to institute proceedings for its dissolution; and besides this, the plaintiff, by offering to surrender to it his stock, in order that the arrangement with the Philadelphia Company might be carried out, recognizes the existence of the corporation.

The fact that the funds received by the agent of the corporation, upon the sale to the Philadelphia Company, were sufficient to satisfy the debts of the corporation, but that such funds have been misappropriated by the agent, will not relieve the plaintiff from liability to pay his assessments, for the corporation still remained liable for the payment of those debts. Nor will the fact that it was the understanding of the plaintiff that he was to be relieved from the payment of his assessments, when there should be realized from the sale of the assets of the corporation, sufficient funds with which to discharge the debts of the corporation, for no contract of that character is alleged.

Upon the question as to whether a stockholder, who alleges that his stock is about to be sold for the satisfaction of an assessment, which he alleges is illegal and void, would suffer such injury by the sale of his stock, as would entitle him to

have an injunction restraining the sale, we deem it unnecessary, in this case, to express an opinion.

Order reversed, and cause remanded, with directions to dissolve the injunction.