[No. 7,453. In Bank.—April 30, 1884.]

## SANTA CRUZ RAILROAD COMPANY, Appellant, v. CLAUS SPRECKLES, Respondent.

CORPORATION — ASSESSMENT — PAID UP STOCK. — Corporations formed and existing under the laws of this State may levy and collect assessments for corporate purposes on shares of stock upon which the subscriptions have been fully paid.

ID. — ADVANCES BY A DIRECTOR. — Money advanced to a corporation by a director, in good faith, and which is received and used for necessary corporate purposes, is a valid claim against the corporation.

APPEAL from a judgment of the Superior Court of the county of Santa Cruz.

The facts are stated in the opinions.

*Charles B. Younger, Taylor & Haight, Garber, Thornton & Bishop,* and *Stewart & Herrin,* for Appellant.

*Jarboe & Harrison,* and *A. Craig,* for Respondent.

Ross, J.—The important question in this case is, to what extent corporations organized and existing under the laws of this State may levy and collect assessments.

On the part of the respondent it is contended that no assessment can be levied upon any stock for which the subscription price has been fully paid.

LXV. CAL.—13.

The matter of assessments is regulated by our statute, and the question is therefore to be determined by its provisions.   Section 331 of the Civil Code provides:  "The directors of any corporation formed or existing under the laws of the State, after one fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form, and to the extent provided herein."

From this section these things at least are clear:  (1) That no assessment for any purpose can be levied until at least one fourth of the capital stock of the corporation has been subscribed; (2) that assessments may be levied in the manner and form and to the extent provided by the statute, for the purpose of paying the expenses, conducting the business, or paying the debts of the corporation; and (3) that the assessment authorized to be levied shall be levied only upon the subscribed capital stock.

The authority thus conferred on the directors of any corporation formed or existing under the laws of this State to levy and collect assessments, for the purposes stated, is thus limited by the next section.

"Section 332:  No one assessment must exceed ten per cent of the amount of the capital stock named in the articles of incorporation, except in the cases in this section otherwise provided for, as follows: —

"1. If the whole capital of a corporation has not been paid up, and the corporation is unable to meet its liabilities or to satisfy the claims of its creditors, the assessment may be for the full amount unpaid upon the capital stock; or if a less amount is sufficient, then it may be for such a percentage as will raise that amount.

"2. The directors of railroad corporations may assess the capital stock in installments of not more than ten per cent per month, unless in the articles of incorporation it is otherwise provided.

"3. The directors of fire or marine insurance corporations may assess such a percentage of the capital stock as they deem proper."

It is further limited by section 333, which reads:—

"Section 333: No assessment must be levied while any portion of a previous one remains unpaid, unless:—

"1. The power of the corporation has been exercised in accordance with the provisions of this article, for the purpose of collecting such previous assessment;

"2. The collection of the previous assessment has been enjoined; or,

"3. The assessment falls within the provisions of either the first, second, or third subdivision of section 332."

We perceive, therefore, but two limitations to the power conferred by section 331—the first being that no *one* assessment must exceed ten per cent of the amount of the capital stock *named in the articles of incorporation,* and the second, that no assessment must be levied while any portion of a previous one remains unpaid. But to each of these *limitations* certain exceptions are made. One of the exceptions to the first limitation is, that if the whole capital of a corporation has not been paid up and the corporation is unable to meet its liabilities or to satisfy the claims of its creditors, one assessment may be for the full amount unpaid upon the capital stock even though it exceed ten per cent of the amount of the capital stock named in the articles of incorporation; or if a less amount is sufficient, then it may be for such a percentage as will raise that amount. And one of the exceptions to the second limitation, which prohibits the levy of any assessment while any portion of a previous one remains unpaid, is when the previous assessment "falls within the provisions of either the first, second, or third subdivision of section 332." In other words, when the previous assessment falls within the provisions of either the first, second, or third subdivision of section 332, another assessment *may be levied* while the previous one remains unpaid.

Now, the first subdivision of section 332 in terms declares that if the whole capital has not been paid up, and the corporation is unable to meet its liabilities or to satisfy the claims of its creditors, the assessment may be for the *full amount unpaid upon the capital stock.* Of course when such an assessment is collected, the stock upon which it is levied becomes fully paid for; yet, according to section 333 another assessment may neverthe-

less be levied. And the reason for the rule thus prescribed by the legislature seems plain; for one of the purposes for which the directors of a corporation are, by section 331, authorized to levy an assessment, is the conducting of the business of the corporation. And when the full amount unpaid upon the subscribed capital stock is required to meet the liabilities of the corporation, if the business is to be further conducted, it would seem very reasonable to authorize another assessment. So, too, does it seem reasonable that other assessments should be authorized when, for instance, the assessment which, by the first subdivision of section 332 is authorized to be levied for the full amount unpaid upon the capital stock subscribed, is insufficient to satisfy the claims of the creditors of the corporation. But whether reasonable or unreasonable, the law is so written, as we understand it.

Nor is it easy to believe that, had the legislature intended by the provisions of the Code in question to authorize assessments only to the extent of the par value of the stock subscribed for, in other words, to provide only for the calling in of the sums subscribed, it would not have expressed that intention in appropriate language. It would have been an easy matter to have done so, and, as we shall presently see, when the Codes were adopted there was standing upon the statute books an old act providing for that very thing. "There are two classes of assessments," says Potter on Corporations, vol. 1, 323, "made by corporations or by the directors thereof, one of which is more properly distinguished as 'calls,' made upon the subscriptions for shares within the amount of the unpaid sums upon the number of shares subscribed, the other, an assessment made upon the corporators not merely as a part of their subscriptions, but to raise a sum of money beyond the amount of subscription for the use of the corporation to sustain its existence, to carry into use its corporate powers and to enable it to exercise its corporate duties." The power to call in the par value of the stock actually subscribed and agreed to be taken was a power incident to the corporation at common law; and the subscriber was liable to an action therefor. But, by the common law, the stock of the subscriber could not be forfeited or sold for the amount of the assessment levied for the unpaid portion of the subscrip-

tion price. To authorize a sale of the stock even for that purpose statutory authority was necessary. Accordingly the legislature of this State, by the Act approved April 14, 1853 (Hittell, art. 932, *et seq.*), empowered the trustees "to call in and demand from the stockholders the sums by them subscribed, at such times and in such payments or installments as they may deem proper." (§ 10.) Notice of each assessment was required to be given in a prescribed way, and provision was then made for the sale of the stock of such of the stockholders as should make default in the payment of the assessments upon the shares held by them.

But in the year 1864 the legislature went further, and by Act approved April 4, 1864 (Stats. 1863–64, 402), provided that "the trustees of any corporation formed under the general laws of this State shall have power to levy and collect, for the purpose of paying the proper and legal expenses of such corporation, assessments upon the capital stock thereof, in the manner and form and to the extent hereinafter provided, and not otherwise." The next section contained the *limitations*, and reads: "No assessments shall exceed five per cent of the capital stock of the corporation, and none shall be levied while any portion of any previous assessment shall remain unpaid or uncollected, except in cases where all the powers of the corporation shall have been exercised in accordance with the terms of this act for the purpose of collecting such previous assessment, and except, also, the collection of a previous assessment against one or more stockholders restrained by injunction or otherwise, in which case further assessment may be levied and collected according to this act." Subsequent sections of the act provided for notice and for a sale of the stock in default of payment of the assessment.

This act was superseded by that of March 26, 1866 (Stats. 1865–66, 458), but in the particulars in which we are considering the Act of 1864, was similar to it.

The Act of 1864 was under consideration by the Supreme Court of this State in the case of *Sullivan* v. *Triunfo Mining Co.* 39 Cal. 465, and it was there held that it was, as it purported to be, applicable to all corporations "formed under the general laws of this State." In that case the court did not pass upon the question whether the provisions of the act were applicable to

assessments for subscriptions to the capital stock, but it treated the assessment then in question as having been levied upon fully paid up stock, *and it sustained the assessment.* The court said: "We express no opinion as to whether the provisions of the act are applicable to calls or assessments for subscription to the capital stock. The question does not arise in this case, for we infer from the complaint that the stock was issued in the usual mode in mining corporations; that is, the stock was issued to the owners of the mine in proportion to their several interests therein."

We have no doubt of the correctness of the construction thus put in the year 1870 upon the Act of April 4, 1864, but whether right or wrong, it is too late now, after the lapse of thirteen years, for the court to change it.

We know, then, that the legislature did first provide only for the calling in by assessment of the full amount of the subscribed stock, and for the sale of the stock, after notice, in default of the payment of the subscription price. We know, also, that the legislature next went further and provided for assessments for certain purposes and within certain limits, upon stock which had been fully paid for; and that thus the law stood when the Codes were adopted. If, in enacting the Codes, the legislature had intended to return to the rule prevailing in this State prior to the passage of the Act of April 4, 1864, and to provide for assessments only for the amount unpaid upon the capital stock, would it not have employed some such language as it had previously employed when it had that purpose in view and have empowered the trustees, as it did by the Act of April 14, 1853, "to call in and demand from the stockholders the sums by them subscribed"? Some such language as that would so easily and so naturally have expressed that intent, that any substantial departure from it naturally suggests the inquiry whether it did not intend something by the change. And when we find, as we do by comparing the respective provisions, that the legislature, in enacting the Codes, adopted substantially and almost literally the very language employed in the Acts of 1864 and 1866 — language which, as this court more than thirteen years ago decided, authorized assessments upon stock that had been fully paid for — and also made specific provision in regard to the assessment

of the sums actually subscribed, the conclusion is to our minds irresistible that, in enacting the sections of the Code in question, it not only did, but clearly intended to authorize, for the purposes and subject to the limitations prescribed, assessments upon stock fully paid for, as well as assessments for the amount unpaid thereon.    Indeed, the sections of the Code as first enacted were but a compilation, with certain modifications and alterations, of the pre-existing statutes on the subject.    This is further shown by the provisions of section 332 in relation to railroad and fire and insurance corporations, which were taken from the pre-existing statutes in relation to the same subjects.    The change made in the Code by the amendment of July 1, 1874, does not alter the case.    It has already been referred to.    Since the amendment, no assessment can be levied for any purpose until after one fourth of the capital stock has been subscribed, and now it is only upon the subscribed capital stock that any assessment at all can be levied.    In other respects the limitations and provisions remain as before.

It is hardly necessary to add that with the policy of the law in question we have nothing to do.

With respect to the indebtedness of the corporation at the time of the levy of the assessment in question, it is sufficient to say that even if it be conceded that, under the circumstances set forth in the agreed statement of facts, a portion of the indebtedness to Hihn is invalid, we think there can be no question as to the validity of the item of cash advanced by him to the corporation; and this added to the other indebtedness of the corporation, is more than the aggregate of the assessment.    The money was advanced to and received by the corporation at a time when it was out of money and in debt, and when it was unable to obtain money from any other source than from Hihn.    Where a director under such circumstances advances the corporation the needed money, which it receives and uses, there surely would be no justice, and we think no law, in holding that the corporation could not repay the amount.    The authorities cited by respondent do not sustain him, and there are abundant authorities to the contrary.    We cite *Seeley* v. *The San Jose Independent Mill and Mining Co.* 59 Cal. 22, and *The Twin Lick Oil Co.* v. *Marbury,* 1 Otto, 587.

As the facts were agreed to by the respective parties, it is useless to order a new trial.

Judgment reversed and case remanded with directions to the court below to enter judgment for the plaintiff on the findings.

SHARPSTEIN, J., concurred.

MORRISON, C. J., concurred in the judgment.

McKINSTRY, J., concurring. — I concur in the judgment, and in what is said by MR. JUSTICE ROSS with respect to the indebtedness of the corporation when the assessment was levied.

With respect to the power of the corporation to levy the assessment, even construing section 332 of the Civil Code as containing limitations upon the power conferred by section 331, yet the assessment in question was legal, inasmuch as it and the previous assessments did not amount in the aggregate to "the amount of the capital stock named in the articles of incorporation."

The subscribed capital stock may be assessed "to the extent" provided in the sections of the Code. (Civ. Code, § 331.)

By section 332 it is provided, that no one assessment must exceed ten per cent *of the amount of the capital stock named in the articles of incorporation,* with certain exceptions. It seems very plain that the amount of "capital stock" named in the exceptions is the amount of capital stock mentioned in the first part of the section — the amount of capital stock "named in the articles of incorporation.",

The argument of respondent would lead us to the conclusion that section 332 does not mean what it distinctly declares, and that assessments are ordinarily to be graduated by reference, not to the amount of capital stock in the articles of incorporation, but by reference to the amount *subscribed.*

Section 332 certainly limits the amount of any *one* assessment. But if it be treated as limiting the whole amount which may be collected by assessment, still the amount of assessments may be equal to the amount of the capital stock named in the articles. If a corporation shall choose to proceed to business after less than all of its stock is subscribed for, it may do so, but, in such case, those who have subscribed are subject to assessments to the same amount as if all the stock were subscribed for.

There are many reasons why the legislature may have imposed such burthen upon the subcribed stock.

THORNTON, J., dissenting.—I dissent. I adhere to the opinion filed in this case on the 30th of June, 1882, and I desire to add to it what follows:—

The limitation in the first subdivision of section 332 of the Civil Code is not changed by the provisions of section 333 so as to allow a recovery here. The purpose of this latter section is to authorize an assessment when any portion of a previous assessment remained unpaid.

Now that is not the case here. It does not appear that there was any portion of any previous assessment remaining unpaid. The *casus legis* not appearing, it is the same, as far as regards the case under consideration, as if it did not exist.

Conceding, then, that an assessment may be levied in cases of the subscribed capital stock, to pay a portion of a previous assessment remaining unpaid, no such state of things appearing herein, the assessment sued on as to this defendant, who has paid for his stock in full, is invalid.

There is no reason to hold that the provisions of section 333, which constitute a limitation on section 332, enlarge in any way the provisions of the last-named section any further than conceded above. I have examined with much care the case of *Sullivan* v. *Triunfo M. Co.* reported in 39 Cal. 459. The question herein considered was not made in that case. Certainly it was not raised or discussed by counsel. No such objection as is here made to the validity of the assessment was made in that case. Nor do I think it was passed on by the court. The Act of 1864, under which the assessment under consideration in the case cited was levied, has no provisions similar to those in section 332. The difference between the two systems, viz., that created by the Act of 1864, and that created by the Civil Code, is plainly apparent. The court, in the Sullivan case, held, substantially, that the Act of 1864 repealed the Act of 1853, and did away with all the limitations and restrictions in the Act of 1853. It left the power to levy assessments without limit, except the restriction on the power to levy one assessment when any portion of a previous assessment remained unpaid.

The decision amounts to this only, that the power of assessment was not limited by the amount of the capital stock by the Act of 1864. This may be admitted to be correct under the provisions of the Act of 1864, because this act contains no such restrictions as are set forth in section 332 of the Civil Code, or the tenth section of the Act of 1853, this last section having been repealed by the Act of 1864.

To explain my meaning more fully: In the case cited the court remarked as follows: "We express no opinion as to whether the *provisions of the act* are applicable to calls or assessments for subscription to the capital stock. The question does not arise in this case, for we infer from the complaint that the stock was issued in the usual mode of mining corporations; that is, the stock was issued to the owners of the mine in proportion to their several interests therein." The point as to which the court expresses no opinion is this, whether the provisions of the Act of 1864, in regard to assessments, include assessments for the subscribed capital stock. That act authorizes the "trustees of any corporation . . . . to levy and collect assessments upon the capital stock thereof, for the purpose of paying the proper and legal expenses of such corporation." The question might arise, whether the words "proper and legal expenses of such corporation" included the subscriptions to the capital stock. This is the question which I understand the court, in the case referred to, declined to express any opinion on. The remark following the statement that the question did not arise in the case, may be interpreted to mean that the capital stock in that case was fully paid up for the reason given. Concede this to be the meaning, and it only amounts to this, that if the capital stock was fully paid, yet the act authorizes assessments for the purpose of paying the proper and legal expenses of the corporation; the power to levy and collect assessments having, under this act, no such limit as the full payment for the subscribed capital stock.

This limit, in my opinion, is found in section 332, and is not in the Act of 1864. I express no opinion as to the question discussed in this opinion, in regard to mining corporations. It is unnecessary to do so, and I therefore forbear to say anything in relation to such corporations.

I am still of opinion that the judgment of the court below is without error and should be affirmed.

McKee, J., and Myrick, J., concurred in the dissenting opinion of Mr. Justice Thornton.

Rehearing denied.

The opinion of Mr. Justice Thornton, in department, above referred to, is as follows:—

This action was brought to recover of the defendant, who was a subscriber for a number of shares of the capital stock of the plaintiff corporation, an assessment levied by the directors of the corporation to pay a debt due it. The defendant's stock had been fully paid up.

The facts fully found by the court had best be here inserted, and they are as follows:—

1st. That said plaintiff is, and was at the several times herein mentioned, a railroad corporation, and is duly organized, incorporated, acting, and existing under and in pursuance of the laws of said State; that said plaintiff was duly incorporated and organized on or about the 18th day of June, A. D. 1873, by the name of "Santa Cruz Railroad Company," for the term and duration of fifty years from the date of its incorporation, for the purpose of constructing, owning, operating, and maintaining an iron railroad in said State, upon the general route commencing at a point near the Pajaro station on the Southern Pacific Railroad, and running thence to and through the county of Santa Cruz, crossing the San Lorenzo River between the county road leading to Watsonville and the bay of Monterey, and thence along or near the coast to the northern boundary of Santa Cruz County, at or near the south boundary of the rancho "Point Ano Nuevo." The plaintiff's principal place of business and principal office is at the city of Santa Cruz, in said county of Santa Cruz, in said State.

2d. That the capital stock of the plaintiff is $1,000,000, and is divided into 10,000 shares of $100 each.

3d. That on and prior to the 10th day of April, A. D. 1878, there had been subscribed of the said shares of said capital stock the number of 5,095½ shares, upon each of which shares the sum

of $100 had been paid by the respective subscribers, and that the plaintiff had issued to the said subscribers certificates for the stock so subscribed.

4th. That of the stock so subscribed the defendant had, prior to the 10th day of April, 1878, subscribed for, and was, on and prior to said 10th day of April, 1878, the owner and holder of 1,605 of the said shares, and that the said 1,605 shares of said stock stood upon the books of the plaintiff in the name of said defendant, and that certificates therefor had been, by this plaintiff, issued to and accepted by this defendant.

5th. That the said defendant had, prior to the 10th day of April, 1878, paid to the plaintiff the full and par value of each of said 1,605 shares of its capital stock, viz., the sum of $100 for each of said 1,605 shares, viz., the full amount of money subscribed by him therefor.

6th. That the first section of said plaintiff's railroad consists of that part or said railroad between said Pajaro station and said city of Santa Cruz, and is 21½ miles long. That on and prior and subsequent to the 10th day of April, A. D. 1878, said first section of said plaintiff's railroad was in running order and equipped with locomotives and cars, and operated daily with locomotives and cars for the carriage of passengers and the transportation of freight.

7th. That on the 10th day of April, 1878, the plaintiff was indebted as follows, in an amount exceeding $70,000, viz.: —

The said indebtedness was made up of the following items: —

| | |
|---|---:|
| Sundry accounts.............................................$ | 953 46 |
| Balance due Southern Pacific Railroad Company..... | 897 63 |
| Balance due A. F. Richardson............................ | 42 28 |
| Amount due F. A. Hihn................................... | 66,705 50 |
| Overdrafts on bank accounts............................. | 7,664 51 |

In addition to the above indebtedness of the plaintiff, it had, in September, 1875, issued certain bonds to the amount of $125,000, payable October 1, 1880, secured by a mortgage of its road and rolling stock, with interest coupons payable semi-annually, viz., April 1st and October 1st of each year, and which bonds were unpaid. Of the interest coupons upon said bonds there was, on the 10th day of April, A. D. 1878, the sum of $7,450 in arrears and unpaid, a portion of which had matured

on the 1st day of October, 1877, and a portion on the 1st day of April, 1878.

8th. F. A. Hihn, in whose favor there was the aforesaid item of indebtedness of $66,705.50, had been from the time of the incorporation of the plaintiff, until after the 10th day of April, 1878, and was, on that day, a director of the plaintiff, and its president.

9th. The indebtedness of plaintiff to the said F. A. Hihn was incurred as follows:—

For cash advanced to the plaintiff....................... $46,682 15
For materials sold to the plaintiff....................... 7,745 82
For coupons unpaid upon aforesaid bonds............ 7,150 00
    (These last-named coupons are not the same as
      those mentioned in the 7th paragraph.)
For land for depot and right of way, sold to the
    plaintiff.................................................... 7,940 29
For interest credited to him.............................. 5,426 94
For salary.................................................... 633 39
For orders on plaintiff by some of its creditors in
    favor of him................................................ 812 62

Upon said amounts payments had been made from time to time, leaving a balance due of $46,705.

Full statements of accounts between F. A. Hihn and the plaintiff, were by the plaintiff's directors presented to the stockholders of plaintiff at their annual meetings in 1876, 1877, 1878, and by said stockholders approved and adopted. The defendant was not present at any of said meetings of stockholders, either in person or by proxy, and took no part in the action of said stockholders in reference to said statements or accounts.

The purchase of the depot lands and right of way from Hihn was negotiated, by the directors of plaintiff, at the meeting on the 27th day of May, 1876, at which meeting defendant Spreckles was present, and acted as director, and was a director of the plaintiff.

The said money was advanced and the supplies furnished by said Hihn, at the request of Titus Hale, who was a director of the plaintiff, and who, with said Hihn, constituted the executive committee of the plaintiff. At the time the money was advanced, the plaintiff was out of money and in debt, and unable to bor-

row money or procure supplies from any other source, and the money and supplies were used by this plaintiff.

Said Hihn had been credited from September, 1876, about half the time, upon the books of the plaintiff, with interest upon his account at the rate of one per cent per month, which was placed to his credit at the end of each month, and upon which interest was thereafter computed at the same rate, this being the rate of interest charged and mode of computation in use at that time by the bank.

Said Hihn was also, during said time, the owner of 2,415 shares of the stock of the plaintiff, and has ever since owned the same. At a meeting of the directors of the plaintiff, on the 10th day of April, 1878, the following action was taken upon said account, and the same appears upon the records of the plaintiff:—

"The accounts between the company and F. A. Hihn from the date of the last examination, July 1, 1877, to this date, were then examined and found correct, and there was found to be due to said Hihn from the company the sum of sixty-six thousand seven hundred and five and fifty one-hundredths ($66,705.50) dollars. It is therefore ordered that the secretary of the company certify to the examination and auditing of such account, and to the amount due thereon; and that such certificate be indorsed on the rendered statement of said account."

Said approval was thereafter indorsed upon the account by the secretary of the plaintiff under the seal of the plaintiff.

10th. On the 10th day of April, 1878, the directors of the plaintiff passed the following resolution:—

"For the purpose of paying the debts of the company it is ordered that an assessment of ten dollars ($10) shall be, and hereby is levied, on each share of the subscribed capital stock of the Santa Cruz Railroad Company, which assessment shall be payable to T. Hale, treasurer of said company, at the office of said company, on Park Street, in the city of Santa Cruz, county of Santa Cruz, State of California, on the 20th day of May, A. D. 1878. Any portion of said assessment remaining unpaid on the 20th day of May, 1878, shall become delinquent. Any stock upon which this assessment shall remain unpaid on the said 20th day of May, 1878, will be delinquent, and will be advertised for sale at public auction, and unless payment is made

before, will be sold on the 20th day of June, 1878, to pay the delinquent assessment, together with costs of advertising and expenses of sale."

11th. That at and subsequent to the time of the making of said last-named order, plaintiff's secretary was and is Amasa Pray. That upon the making of said last-named order said secretary of plaintiff caused to be published in the newspaper, and for the length of time hereinafter mentioned, a notice, of which the following is a copy, to wit: —

### NOTICE OF ASSESSMENT.

Name of corporation in full: "Santa Cruz Railroad Company." Location of principal place of business: City of Santa Cruz, county of Santa Cruz, State of California.

Notice is hereby given that at a meeting of the directors of the Santa Cruz Railroad Company, held on the 10th day of April, A. D. 1878, an assessment of ten dollars ($10) per share was levied upon the capital stock of the said corporation, to wit, the said Santa Cruz Railroad Company, payable on the 20th day of May, A. D. 1878, to T. Hale, treasurer of said company, at the office of said company, on Park Street, in the city of Santa Cruz, county of Santa Cruz, and State of California.

Any stock upon which this assessment shall remain unpaid on the said 20th day of May, 1878, will be delinquent, and advertised for sale at public auction, and unless payment is made before, will be sold on the 20th day of June, A. D. 1878, to pay the delinquent assessment, together with costs of advertising and expenses of sale.

In witness whereof I have hereunto set my hand and affixed the seal of said corporation, on this the 10th day of April, 1878.

[SEAL.]                                      AMASA PRAY, Secretary.

Location of office — At railroad depot, on north side of Park Street, in the said city of Santa Cruz.

That a copy of said last-named notice was personally served on said defendant at the city and county of San Francisco, in said State, on the 22d day of April, A. D. 1878. That a copy of said notice, inclosed in an envelope, and addressed to said defendant, at his place of residence in said city and county of San Francisco, in said State, and the postage thereon prepaid,

was deposited in the postoffice at the said city of Santa Cruz, on the 20th day of April, A. D. 1878, by said secretary. That copies of said last-named notice, inclosed in envelopes and addressed to each stockholder of plaintiff at his place of residence, and the postage thereon prepaid, was, on the 20th day of April, A. D. 1878, deposited by said secretary in the postoffice at said city of Santa Cruz. That said last-named notice was published once a week for four successive weeks prior to the 20th day of May, A. D. 1878, to wit, on the 20th and 27th days of April, A. D. 1878, and on the 4th, 11th, and 18th days of May, 1878, in a newspaper of general circulation, and devoted to the publication of general news, and known as and called the Santa Cruz *Sentinel,* and published at the place designated in plaintiff's articles of incorporation as plaintiff's principal place of business, to wit, said city of Santa Cruz.

12th. That said defendant has not paid said assessment of ten dollars per share, or any part thereof, on said 1,605 shares of plaintiff's capital stock, or on any part or portion or share thereof.

13th. That on the 22d day of May, 1878, the directors of plaintiff adopted the following resolutions:—

"It appearing that a large part of the assessment levied by this board on the 10th of April, 1878, remains unpaid, and has become delinquent, it is therefore ordered that the board of directors hereby elect to waive further proceedings under chapter 2, title 1, of part 4, of the Civil Code of the State of California, for the collection of delinquent assessments, and hereby do elect to proceed by action to recover the amount of all such delinquent assessments. And it is further ordered that the secretary omit the publication of notice of sale for said delinquent assessment. And it is further ordered that the president cause the collection of said delinquent assessment to be enforced by action."

14th. That the nominal capital stock of the plaintiff, and the amount of its capital stock named in its articles of incorporation, is $1,000,000, divided into 10,000 shares of $100 each, and that the plaintiff has never issued or sold or received subscriptions for or disposed of more than 5,095½ shares of its said capital stock, but still retains undisposed of and unissued 4,904½ shares of its said capital stock.

That the plaintiff has not been able to sell any more of its stock than the aforesaid number of 5,095½ shares thereof, and that the railroad of the plaintiff, except the first section, has not been completed, and that no portion of the said railroad has been built since the 1st of January, 1877.

15th. That the plaintiff has never fixed its capital stock at any amount other than the original amount of $1,000,000. Nor has it taken any steps in accordance with the provisions of section 458 of the Civil Code of this State, nor has there ever been any certificate, other than plaintiff's articles of incorporation, filed in the office of the secretary of State, stating the amount of its fixed capital stock, and that the whole thereof has been paid in.

The court rendered judgment for defendant, and plaintiff appealed.

The contention of defendant is that no assessment can be levied on stock fully paid up, and this presents the only point to be considered.

The power in regard to assessments of capital stock is defined by sections 331 and 332 of the Civil Code, which are in these words:—

"Sec. 331. The directors of any corporation formed or existing under the laws of this State, after one fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business, or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form, and to the extent provided herein.

"Sec. 332. No one assessment must exceed 10 per cent of the amount of the capital stock named in the articles of incorporation, except in the case in this section otherwise provided for, as follows:—

"1. If the whole capital of a corporation has not been paid up, and the corporation is unable to meet its liabilities, or to satisfy the claims of its creditors, the assessment may be for the full amount unpaid upon the capital stock; or if a less amount is sufficient, then it may be for such a percentage as will raise that amount.

"2. The directors of railroad corporations may assess the capital stock in installments of not more than 10 per cent per

LXV. CAL.—14.

month, unless in the articles of incorporation it is otherwise provided.

"3. The directors of fire or marine insurance corporations may assess such a percentage of the capital stock as they deem proper."

It will be observed that the authority to levy and collect assessments is given by the first section quoted.

They may be levied and collected *upon the capital stock subscribed*, after one fourth of it has been subscribed, for the purpose of paying expenses, conducting business, or paying debts, but no further than provided by the Code. (§ 331, Civ. Code.) The power to assess is thus limited *to the capital stock subscribed*. The extent to which this power may be exercised is declared in section 332, and it cannot fail to arrest the attention upon a careful perusal of the section, that when a corporation is unable to meet its liabilities, or to satisfy the claims of creditors, the assessment can only be for the *amount unpaid* on the capital stock, and when necessary to discharge the debt or liability, it may be for the full amount unpaid on the capital stock, even though it exceed the ten per cent limitation in the first clause of the section. But nowhere can be found any power to exceed the amount unpaid on the stock, though the debts exceed the sum which may be thus raised. The two sections read together limit the power to assess to the unpaid amount due on the capital stock *subscribed for*, even though the amount which may be thus realized is insufficient to discharge the debt or liability of the corporation.

The creditor contracts under the law as it is written. He is notified in advance of his entering into any engagement with the corporation of the means to which the corporation can resort to raise the money for his payment. When his debt exceeds the amount which the corporation through its lawful agents can raise for his satisfaction, he can resort to his remedy by action against the stockholders under section 322 of the Civil Code for the recovery of the amount due him, or such other means of relief as the law supplies. The second subdivision of section 332 only refers to the 10 per cent limitation, which may be done away with by a different provision in the articles of incorporation. But the language of this subdivision enforces the

conclusion above reached and expressed, by the limitation of the power of assessment of the capital stock *in installments*. This last word plainly refers to installments of the capital stock, and of that only, and confines the power to installments of the amount so fixed.

It follows from the foregoing that the judgment must be affirmed, and it is so ordered.