VON HORST v. AMERICAN HOP & BARLEY CO. et al.

(Circuit Court, N. D. California. March 15, 1910.)

No. 14,942.

1. CORPORATIONS (§ 175*)— CAPITAL STOCK — ASSESSMENT FOR PAYMENT OF DEBTS—CALIFORNIA STATUTE.

Under the statutes of California as construed by its Supreme Court, the capital stock of a corporation, although fully paid up at par, is subject to assessment by the corporation for the payment of its debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 175.*]

2. FRAUD (§ 41*)—PLEADING—SUFFICIENCY OF ALLEGATIONS.

General allegations of fraud are insufficient to invoke the action of a court of equity, unless accompanied by allegations of specific facts which tend at least to give that complexion to the transaction.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 36, 37; Dec. Dig. § 41.*]

3. CORPORATIONS (§ 189*) — SUIT BY STOCKHOLDER TO ENJOIN ASSESSMENT— FRAUD.

A bill by a stockholder to enjoin the enforcement of an assessment on his stock by the corporation for the payment of debts, which assessment the corporation has the legal power to make, on general allegations that it was made without notice to complainant and pursuant to a conspiracy

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to deprive him of his stock, is insufficient to entitle him to relief, where it alleges no facts which tend to prove such conspiracy or any improper motive and itself shows that the company has a large indebtedness which is past due and secured by a transfer of its entire property, and it does not appear that notice of the intended assessment, under the circumstances shown, was required by any statute or by-law.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 189.*]

In Equity. Suit by Louis Von Horst against the American Hop & Barley Company, Central Trust Company of California, J. Murray Earsman, and A. B. Parker. On demurrer to bill. Demurrer sustained.

This is a bill in equity to declare illegal and void and restrain the enforcement of an assessment by a corporation of its capital stock. The defendants have demurred to the bill for want of facts to warrant the equitable interference of the court.

The bill alleges, in substance, that complainant is the owner of 189,910 shares out of a total of 190,000 shares outstanding of the capital stock of the defendant American Hop & Barley Company; that said company is the owner of a large quantity of real estate devoted to the growing of hops which is of value very largely in excess of the indebtedness of said corporation; that in the year 1905 and after there had accrued an indebtedness in a large amount from said hop company to the defendant Central Trust Company, which it had been unable to pay, complainant at the request of the trust company, and for the purpose of the better securing the payment of said indebtedness, executed and delivered to the attorney of the trust company an irrevocable power of attorney or proxy authorizing and empowering said attorney to represent complainant at all stockholders' meetings of said hop company, and to vote thereat 170,000 shares of the stock thereof, and at the same time so arranged that said trust company should name and dictate the election of a majority of the members of the board of directors of the company and thereby manage and control the policy, affairs, business, and transactions thereof. And it is alleged that in pursuance of said arrangement there was caused to be chosen and elected by said trust company a majority of the directors of the hop company, and that thereby the trust company "has been enabled to control, and has controlled, the affairs of said hop company, and has excluded this complainant from having any voice or influence in the management. And that having, by the said means, placed your orator in a helpless condition, the said defendants have conspired and combined to utterly despoil and deprive this complainant of all and every part of his said capital stock and of all his valuable interests thereby represented in the said hop company and the property owned by it."

It is alleged that the hop company by and through its board of directors on or about the 24th day of January, 1908, made and executed a deed absolute in form of all its real property to the defendant trust company, but as security for the payment within two years from that date of the sum of $200,000 then due and owing to the trust company, and the further sum of $37,625.66, then owing by said hop company to diverse other creditors; that this deed was executed, delivered, and accepted upon the condition that the hop company had the right at any time within two years thereafter, upon paying the sums due to the trust company and said other creditors, to have a reconveyance of all of said lands and property; and that the trust company "agreed and bound itself to hold said lands as hereinbefore stated for the period of two years and to reconvey the same to said hop company upon the payment by the latter of the said indebtedness and all other indebtedness due from it to the said trust company."

After alleging that, "instigated and prompted by the trust company," and without notice to complainant, certain abortive attempts, not necessary to recite, were made by the directors of the hop company to levy assessments upon the stock of that corporation, which were thereafter abandoned, it is alleged that subsequently, "in further pursuance of said combination and con-

spiracy," while complainant was in Europe, and without notice to him, the board of directors of said hop company, at a meeting held for the purpose, proceeded to and did pass a resolution for the assessment of the stock of said corporation in the sum of 10 cents per share—the assessment here involved—and thereafter caused notice of such assessment to be published and have announced and declared that unless the assessment be paid said stock will be sold therefor, and that unless restrained defendants will at the date noticed sell the whole of said shares belonging to complainant and finally deprive him thereof and cause him irremediable loss and damage. It is alleged that "said pretended assessment is illegal and invalid because the whole of said capital stock of said corporation has been heretofore called in and actually and in good faith paid up in full and no part thereof is unpaid or subject to any call, and that the said pretended assessment is not levied or called in good faith, but for the purpose of 'freezing out' this complainant and maliciously and unlawfully depriving him of his property and rights and eliminating him from said hop company and all rights and interest therein."

It is alleged: That defendants, and particularly the defendant Earsman, the president of said hop company, "entertain a strong feeling of malice toward this complainant, and the said pretended assessment is only the beginning of a series of similar proceedings to impoverish this complainant; and the defendants have openly declared their intention to continue to harass this complainant by repeated and continuous assessments of the same kind." That the trust company is greatly embarrassed in its banking business because of the remonstrance of the bank examiner against its carrying so large an indebtedness against the hop company, and that "said trust company has inspired its codefendants herein and a majority of the board of directors of the hop company, and they and all of them have combined and conspired under the pretense of levying a series of assessments, to sell out and destroy all the rights and interests of this complainant as a stockholder of and in said last-named company, and to bid off all his said shares for and in the name of said company" with the purpose of bringing about a condition whereby "said trust company would be relieved of its obligation to hold said lands as security until January, 1910, and be enabled to make an immediate sale of said lands at a sacrifice so as to relieve its said embarrassment, but to the financial ruin of this complainant." That defendants, "in pursuance of said conspiracy to freeze your orator out, have concocted a scheme and plan for the reorganizing of said hop company as soon as this complainant can be eliminated therefrom, and for the financing of the affairs thereof, and so as to obtain and have for themselves and to the exclusion of this complainant all the equities, surplus, and profits to arise from said valuable properties after paying off the indebtedness now owing by said hop company." And finally it is alleged that before complainant departed for Europe "he was assured by the said trust company that his interests would be carefully guarded and protected, and that he might feel secure; but as soon as he was gone said defendants, as your orator is informed and believes, went actively to work to confiscate and destroy all his rights and interest and concocted the said scheme of pretended assessments upon his shares of capital stock to deprive him of his rights, and did not permit him to be notified of the holding of the meeting of the board of directors at which it was proposed or intended to levy the said pretended assessment."

These are the substantive averments of the bill. Some other matters are alleged, but they are not material.

S. C. Denson, for complainant.

F. A. Denicke, Edward B. Young, and Gavin McNab, for defendants.

VAN FLEET, District Judge (after stating the facts as above). The demurrer gives rise to two questions: First, whether under the law of this state the capital stock of a corporation, the par value of which has been fully paid up, is thereafter subject to assessment by the corporation for the payment of its obligations; second, if it is so

subject, whether the assessment here in question was so vitiated by fraud in its purpose and procurement as to entitle complainant to have it set aside.

1. As to the first question I feel justified in saying that so far as this court is concerned the inquiry is concluded and set at rest by the leading case, decided by the Supreme Court of the state, of Santa Cruz Railroad Co. v. Spreckles, 65 Cal. 193, 3 Pac. 661, 802, involving the precise question here. In that case, where the sections of the California Civil Code providing for the assessment of the stock of corporations were under consideration, the court, after a very careful review of the question both in department and in bank, reached the conclusion, and so held, that, under these provisions, corporate stock, notwithstanding the subscription price has been fully paid in and no part thereof remains subject to call, is nevertheless liable to assessment by the corporation for corporate purposes—in that case the payment of obligations incurred for operating expenses. It is true that the conclusion there reached was by a divided court, and this fact has led to a very earnest attack by complainant's counsel upon the integrity of the case as an authoritative decision, upon the ground, as claimed, that the opinion of the court (by Mr. Justice Ross) did not in fact receive the sanction of a majority of the court; it appearing that but one associate concurred generally, one concurred specially, the Chief Justice concurred in the judgment, while the other three justices dissented.

I do not feel called upon to analyze the attitude of the members of the court nor determine precisely how far it might affect the value of the case as authority upon a question presenting a sharp conflict of decision, for such is not the case here. This decision was rendered more than a quarter of a century ago, and during all the period elapsing since that date the doctrine as declared in the opinion of Judge Ross has stood without question in this state and has been received and accepted by the profession generally, I might say universally, bench and bar alike, as an authoritative determination of the question involved, and has been quoted and referred to as such, not only by text-writers, but in decisions of the same and other courts (Green v. Abietine Medical Co., 96 Cal. 322, 31 Pac. 100; Vermont Co. v. Declez Co., 135 Cal. 579, 67 Pac. 1057, 56 L. R. A. 728, 87 Am. St. Rep. 143; Turner v. Fidelity Loan Concern, 2 Cal. App. 122, 83 Pac. 62, 70), and it is safe to say that upon the faith of it millions of dollars have since its rendition passed hands in the transactions of corporations in this state without question. Under the circumstances, the question, involving as it does the construction of the statutes of the state, it would be asking much of this court, even if it entertained a serious doubt of the correctness of that construction, to reopen the question here, since obviously the initiative to that end should come from the courts of the state. But I find, moreover, that my own views as to the proper interpretation of the provisions of the Code involved are in full accord with those expressed by Judge Ross; and I am further satisfied, as suggested in that opinion, that the earlier case of Sullivan v. Triunfo M. Co., 39 Cal. 459, there referred to, so necessarily involved the same question that, while it was not discussed, the conclusion arrived at must be regarded as sustaining the same view. Such being the result

of the decisions of the Supreme Court of the state, further inquiry into the subject here must be deemed foreclosed.

2. Does the bill state a case for equitable interposition on the ground of fraud? Very obviously to my mind it does not. It is averred generally and repeated in various forms that the defendants through malice and enmity and other improper motives have entered into a conspiracy to deprive complainant of his holdings in the defendant hop company through fraudulent and inequitable means by making repeated assessments upon the stock without right or necessity, in the expectation of selling out his stock without notice to him and without an opportunity to protect himself. But there is an absence of tangible facts to sustain these general averments. Mere general allegations of fraud are, of course, not sufficient. They must be pointed by specific facts which in and of themselves tend to impart that complexion to the transaction, or that, at least, are susceptible of that construction. Without such support the denunciation of a transaction as being the result of conspiracy and fraud is a mere hurtless conclusion, however strongly charged or frequently reiterated.

What is there in the bill, as the facts are stated, tending to impart the aspect of fraud to the transaction counted upon, or to sustain the repeated assertion of a conspiracy to "freeze out" the complainant and deprive him unjustly of his stock? The company was very heavily indebted and had hypothecated all of its tangible assets, its real estate, to the trust company as security for that debt. Neither of these facts is assailed in any way as wanting in good faith. This indebtedness, as appears from the bill, was due and payable; the allegation as to the conditions of the trust under which the deed was given and accepted being simply that the trust company was to hold the land without disposition for a period of two years to be reconveyed if the indebtedness should be liquidated within that time. The hop company could therefore pay its debt at any time, and, if it wanted to save its lands from forced sale, it must pay within the two years the trust was to exist. This being so, it was competent and proper for the debtor company to take any legal course to relieve itself of its obligations. The assessment of its stockholders was, then, as we have seen, one mode it could adopt, unless there was something in the contractual situation of the parties to prevent that course or make it inequitable. But nothing is alleged that could have that effect. The complainant himself had put the trust company in control of the affairs of its debtor, and there is no express averment of any promise or agreement on its part that the stock of the hop company should not be assessed. It is not alleged in any specific way that the assessment was not levied for a proper purpose, but simply that it was not levied "in good faith, but for the purpose of freezing out this complainant." Since fraud will not be presumed, but must be made to appear, this averment is not sufficient to negative the presumption that the assessment was levied for a proper purpose or cast discredit upon its bona fide character. The theory of the complainant seems to be that, because the lands held by the trust company were greatly in excess in value over the amount of the indebtedness, the trust company should be willing to let its demand await conditions which would enable it to be worked out of the land, and

that it is inequitable and unjust for assessments to be levied through its procurement upon the stock of the hop company. But there being no legal obligation on its part to take that course, there is nothing inequitable in any actionable sense in its seeking to have its debt paid through any proper means within its control. And the means being a legal one, the averment of a malicious or sinister motive behind its actions adds nothing to the bill. The motive with which a creditor pursues a perfectly proper remedy to secure payment of a debt does not affect his right to that remedy. And, of course, if one is pursuing a proper remedy to collect his debt, the fact of the debtor's situation being one which makes it difficult to meet his obligation offers no objection, legal or equitable. The averment that the complainant was promised by the trust company "that his interests would be carefully guarded and protected, and that he might feel secure," is, in the light of the other averments of the bill, too vague and indefinite to add anything of value to complainant's case. It does not appear from any fact disclosed that his interests or rights, in any legal sense, were being transgressed or ignored. Nor does the averment of a want of notice to complainant of the purpose to assess the stock add anything of substance to the bill. I know of no obligation independent of one created by specific agreement or by-law requiring notice to either a director or stockholder, absent from the country, of proceedings of a corporation to assess its stock. No such obligation is stated in the bill.

The bill, as I construe its averments, therefore, is wanting in equity, and the demurrer must be sustained.

It is so ordered.