[No. 14458. Department Two. — October 4, 1892.]

## R. M. GREEN, APPELLANT, v. ABIETINE MEDICAL COMPANY, RESPONDENT.

CORPORATIONS — ASSESSMENT OF PAID-UP STOCK — STOCK ISSUED BELOW PAR — EQUALITY OF ASSESSMENT. — Where all the stock of a corporation is fully paid up, it is assessable; and as between stockholders who have obtained paid-up shares at one fourth of their par value in exchange for property conveyed to the corporation, and those who have obtained paid-up shares at the same rate by purchase, for cash, of stock reserved for working capital, the effect of an assessment upon all the stockholders is equal and just.

ID. — SALE OF RESERVED STOCK AT DISCOUNT — CONSENT OF STOCKHOLDERS . — PAID-UP CERTIFICATE — ESTOPPEL. — When, by consent of all the stockholders of a corporation, reserved stock is sold by the corporation for less than its par value, it is to be considered as fully paid-up stock; and when the equitable owners of all the unsold stock, who are the legal owners of all the stock issued, and who control the board of directors, procure the sale, by the corporation, of the reserved stock for one fourth of its par value, and the issuance of certificates, in accordance with the by-laws, certifying to the purchasers that the price paid was full payment, and that the stock purchased was fully paid stock, the stockholders who are the real sellers, as well as the corporation, are estopped from denying that the stock sold was fully paid-up stock, and from claiming that any sum is due or owing from the purchasers or holders thereof to the corporation.

ID. — LEGALITY OF CONTRACT — CONSTRUCTION OF CIVIL CODE. — The contract for the sale of reserved stock below par as paid-up stock is not unlawful, and is not in violation of section 323 of the Civil Code, which does not prohibit the issuing of certificates before the stock is fully paid up, but enjoins the duty of issuing certificates for fully paid-up stock, and authorizes the stockholders to enact by-laws in accordance with which the corporation may issue certificates before full payment.

ID. — RATIFICATION BY STOCKHOLDERS. — Though the unanimous consent of stockholders cannot cure the illegality of issuing certificates in violation of law, yet they may ratify an unauthorized issuance of certificates.

ID. — AUTHORITY TO SELL STOCK AS FULLY PAID — ACQUIESCENCE OF STOCK-HOLDERS. — Where all of the stockholders have, at a regular meeting before the sale, authorized and directed the corporation to sell the reserved stock as fully paid stock for fifty cents per share, and the by-laws require each certificate to state that the stock was fully paid, and the certificates issued on the sales of the reserved stock so stated, and during a period of more than three years immediately after such sales and the issuance of such certificates all the stockholders acquiesced therein, none of them can deny that the price paid was full payment for the stock.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial.

The facts are stated in the opinion.

*H. V. Reardon,* for Appellant.

The corporation defendant had not the power to issue or sell its stock for a sum less than its par value, and having done so, cannot assess stock issued upon full payment until the full par value of all stock issued has been collected. (Civ. Code, secs. 323, 359; *Stoneham Branch R. R. Co.* v. *Gould,* 2 Gray, 278; *Central Turnpike Co.* v. *Valentine,* 10 Pick. 142; Morawetz on Corporations, secs. 306, 836, 842, and cases cited; *Mitchell* v. *Beckman,* 64 Cal. 121.) The corporation cannot plead want of power to make the contract. (*Bradley* v. *Ballard,* 55 Ill. 417, 418; 8 Am. Rep. 656; *Chicago Building Soc.* v. *Crowell,* 65 Ill. 459; *Darst* v. *Gale,* 83 Ill. 141; *Ward* v. *Johnson,* 95 Ill. 240; *Main* v. *Casserly,* 67 Cal. 128.)

*F. C. Lusk,* for Respondent.

The corporation had the inherent power to assess its stock when necessary, and it cannot by its by-laws provide that the stock shall be unassessable. (*Reclamation Dist.* v. *Hagar,* 66 Cal. 56; Civ. Code, sec. 303.) Even if it be conceded that the stock was unassessable, the appellant waived and relinquished his rights. (*Cal. Southern Hotel Co.* v. *Callender,* 94 Cal. 120; Field on Corporations, secs. 84, 87; Thompson on Liability of Stockholders, secs. 120, 163, 170; Morawetz on Corporations, sec. 156; *G. W. T. Co.* v. *Bush,* 35 Ill. App. 213; *Kansas C. H. Co.* v. *Harris,* 51 Mo. 464.) The corporation had the right to sell the nineteen thousand five hundred shares at fifty cents as full-paid stock, and the purchasers are not subscribers, and are not liable to be called on to make up the difference between that and its nominal value. (*Stein* v. *Howard,* 65 Cal. 616; *Sullivan* v. *Triunfo Mining Co.,* 39 Cal. 466; *Phelan* v. *Hazard,* 6 Cent. L. J. 109, 112; *In re South Mountain Con. M. Co.,* 7 Saw. 35, 36; *Mitchell* v. *Beckman,* 64 Cal. 121; *Harrison* v. *A. & R. R. Co.,* 4 McCrary, 264; *Ross* v. *Kelly,* 36 Minn. 38; *Williams* v. *W. U. T. Co.,* 93 N. Y. 162; Angell and Ames

on Corporations, 6th ed., secs. 554, 555; *Gray* v. *Portland Bank*, 3 Mass. 364; 3 Am. Dec. 156; *Eidman* v. *Bowman*, 58 Ill. 444; 11 Am. Rep. 90; *Coit* v. *N. C. G. A. Co.*, 14 Fed. Rep. 13; *In re Anglo Dambeau Co.*, L. R. 20 Eq. 339; *Sawyer* v. *Hoag*, 17 Wall. 610.) As between the stockholders and the corporation, such a transaction is unquestionably valid, however it might be affected when attacked in the interest of a creditor, even in jurisdictions where a corporation cannot issue its stock for less than par value. (*Scoville* v. *Thayer*, 105 U. S. 153; *Waterhouse* v. *Jamieson*, L. R. 2 H. L. Sc. Cas. 29; *Currie's Case*, 3 De Gex, J. & S. 367; *Carling, Hespeler, and Walsh's Cases*, L. R. 1 Ch. Div. 115; *Skrainka* v. *Allen*, 7 Mo. App. 434; *Gelpcke, Winslow & Co.* v. *Blake*, 15 Iowa, 387; 83 Am. Dec. 418.) Where stock can only be issued when fully paid, if property is taken, it must be at its fair value, and is only a payment on the stock to that extent. (Morawetz on Corporations, secs. 428, 825; *Graught* v. *Payne*, 6 Lea, 283; *Wetherbee* v. *Baker*, 35 N. J. Eq. 501; *Tasker* v. *Wallace*, 6 Daly, 364; *Crawford* v. *Rohrer*, 59 Md. 599; *Huntington* v. *Attrill*, 118 N. Y. 365; *N. T. Co.* v. *Gilfillan*, 124 N. Y. 302; *E. L. Co.* v. *B. W. & E. Co.*, 92 Ala. 407; *Goodrich* v. *Dorman*, 14 N. Y. Sup. Ct. 879; *Farmers' Bank* v. *Gallaher*, 43 Mo. App. 482.) Even if the nineteen thousand five hundred shares of stock could not legally be sold at less than its par value, as it was done by the unanimous consent of all the share-holders, it cannot be questioned. (Morawetz on Corporations, secs. 228, 261, 290, 490, 581, 641, 645; Field on Corporations, sec. 273; *Jones* v. *Morrison*, 31 Minn. 140; *Goff* v. *H. P. & W. Co.*, 62 Iowa, 691; *St. C. L. Co.* v. *Mittlestadt*, 43 Minn. 91; *Walburn* v. *Chenault*, 43 Kan. 352.) If the sale of the nineteen thousand five hundred shares was illegal, it has been acquiesced in and ratified by Green, and he is estopped from questioning it. (Morawetz on Corporations, sec. 632; Field on Corporations, secs. 162–167, 194; *Main* v. *Casserly*, 67 Cal. 129; *Pixley* v. *W. P. R. R. Co.*, 33 Cal. 191; 91 Am. Dec. 623; *Underhill* v. *S. B. L. B. & L. Co.*, 93 Cal. 300.)

VANCLIEF, C. — The defendant is a California corporation which was organized on the twenty-second day of May, 1885, for the purpose of manufacturing medicines from the sap of trees known as abietine-trees, and the plaintiffs are stockholders of the corporation. The corporation levied an assessment of ten cents per share on its capital stock. The plaintiffs having refused to pay the assessment, their stock was advertised for sale. To prevent the sale, plaintiffs paid the assessment, under protest that the assessment was void and that they were under no lawful obligation to pay it.

The object of this action is to vacate the assessment, to recover from defendant the sum of the assessments paid by the plaintiffs, and to enjoin the defendant from further assessing plaintiffs' stock.

Judgment passed for defendant, from which, and from an order denying his motion for a new trial, the plaintiff Green alone appeals.

The material facts found by the court and admitted by the pleadings are substantially as follows: —

On the day the corporation was organized, May 22, 1885, A. F. Jones, John D. Williams, and the plaintiff Green entered into a written agreement with each other, reciting that they had "incorporated themselves into a corporation known as the Abietine Medical Company," and that each of them owned certain described property necessary for the use of the corporation in its business, and agreeing that each would sell such property to the corporation in consideration of a specified number of shares of "full-paid, unassessable" stock of the corporation. The plaintiff Green agreed to sell his property for 12,750 shares of such stock and $1,000 in cash, Williams agreed to sell his property for 5,000 shares of such stock, and Jones agreed to sell his property for 12,750 shares of the stock. The whole capital stock, as stated in the articles of incorporation, was one hundred thousand dollars, divided into fifty thousand shares.

The corporation was not a party to this agreement, but entertained it as a proposal, and thereafter, at a reg-

ular meeting of its board of directors held on June 8, 1885, accepted the proposal, took the property described in the agreement, and ordered the issuance of certificates of stock to Green, Jones, and Williams, according to the terms of their agreement, and such certificates were then issued, stating, among other things, that the stock was "full-paid and unassessable." At the meeting of June 8th, the board ordered the issuance of certificates for ten shares to E. W. Fogg, and twenty shares to Floyd Taber, which had been given them to qualify them to become directors. Of the remainder of the stock, nineteen thousand five hundred shares were reserved by the corporation to be sold for "working capital," and were ordered to be sold for not less than fifty cents per share, and afterwards were sold to various persons for fifty cents per share.

Article 10 of the original by-laws of the corporation prescribed the form of certificates of stock, containing this statement, viz.: "And that the same [shares] is full-paid and unassessable stock." But at a meeting of the stockholders held September 6, 1886, this by-law was amended by striking out the words "and unassessable." At a stockholders' meeting, June 2, 1885, it was unanimously resolved "that no assessment be levied on the capital stock of the company without the unanimous vote of the stockholders."

It also appears that there was no by-law authorizing the issuance of certificates of stock prior to full payment.

At a stockholders' meeting, September 6, 1886, at which all the stock was represented, " it was unanimously resolved that it is the sense of the stockholders of this corporation that the directors thereof do levy assessments on the capital stock of said corporation when necessary for the business thereof to be properly conducted, said assessments not to exceed the amount of ten cents per share at any one assessment."

At a directors' meeting, April 25, 1887, it was resolved to levy an assessment of ten cents per share. This assessment was levied on all the stock, and was all paid without objection.

Again, August 18, 1887, another assessment of ten cents per share was levied on all the stock, and was all paid without objection.

From the organization of the corporation until the commencement of this action the appellant Green was a stockholder and director, and voted for each of the above-mentioned orders and resolutions of the stockholders, and of the board of directors, except that at the meeting of August 18, 1887, he moved to amend the resolution by reducing the assessment to five cents per share, and when his proposed amendment was lost, he voted against the resolution.

The assessment to which appellant first objected, and which he seeks to avoid and set aside by this action, was levied November 14, 1889.

The court found that no part of the capital stock of defendant was ever subscribed for by any person, but that the whole stock had been sold by the corporation to various persons as full paid-up stock; that the stock sold to Green, Jones, and Williams in exchange for their property was not sold for its par value of two dollars per share, and that the consideration paid by them in property did not exceed fifty cents per share; that the nineteen thousand five hundred shares reserved for working capital were sold to various parties for cash at fifty cents per share, and that all the certificates issued to purchasers of stock were precisely in the same form, — all contained the statement that the stock was full-paid and unassessable"; that there was no unpaid subscription price due or owing to the corporation on any part of the nineteen thousand five hundred shares sold for working capital, nor upon any other stock; that all the stock of the corporation — fifty thousand shares — had been issued and is held as fully paid stock, and all stands upon the same footing; that fifty cents per share was the full value of the nineteen thousand five hundred shares sold for working capital at the times it was sold; and that the purchasers thereof never subscribed for any part thereof and never promised to pay the par value thereof, nor

any price exceeding fifty cents per share, which they paid.

As conclusions of law, the court found that all the stock is alike assessable, and that the assessment in question is valid.

It is, tacitly at least, and I think correctly, conceded by appellant's counsel that where all the stock of a private corporation in this state is fully paid, it is assessable. (*Santa Cruz R. R. Co.* v. *Spreckles*, 65 Cal. 193.) But counsel contends that the stock issued to Green, Williams, and Jones in exchange for property was fully paid up, while the nineteen thousand five hundred shares reserved for working capital, and sold for fifty cents per share, must be considered as having been subscribed for by the purchasers thereof at its par value of two dollars per share, and that until this is called in or paid, the alleged fully paid stock issued to Green, Williams, and Jones in payment for property cannot be assessed.

Passing all questions as to the correctness of this theory, it will be sufficient to say that the most material of the assumed facts upon which it is constructed are negatived by the findings of the court.

No stock was subscribed for, but all the stock was purchased from the corporation; Green, Williams, and Jones did not pay for the stock purchased by them a sum exceeding fifty cents per share; all the certificates issued to purchasers of stock were in the same form, stating that the stock was fully paid; all the acts of the corporation prior to the assessment of November 14, 1889, were advised and consented to by the plaintiffs in their dual character of stockholders and directors, except that appellant objected to the *amount* of the second assessment; the actual value of the stock did not exceed fifty cents per share at the times when it was sold by the corporation; and the court found that all the stock was fully paid stock, as stated in the certificates issued by the corporation in obedience to a by-law adopted by the plaintiffs in their character of stockholders.

It should be observed that the rights of creditors are not involved in this suit, and that, from an equitable point of view, and as matter of fact, the suit is a contest between two classes of stockholders, viz., the class which exchanged property for stock and the class which paid cash for stock. In this view of the case, it seems clear that the plaintiffs have no just ground for complaining of the assessment in question. As both parties to the contest paid the same price for their stock, the effect of the assessment upon all stockholders was equal and just.

Moreover, on the facts pleaded, and found by the court, I think the plaintiffs (especially the appellant) are estopped from denying that the stock sold for cash is not fully paid stock, and from claiming that any sum is due or owing thereon from the purchasers or holders thereof to the corporation. At the time the reserved nineteen thousand five hundred shares were offered for sale at fifty cents per share, Green, Williams, and Jones controlled the board of directors, and were the equitable owners of all the unsold stock, and the legal owners of all stock that had been sold. In the estimation of a court of equity, they constituted the corporation. In obedience to their orders and resolutions, their fictitious creature, — the corporation, — as their trustee, sold the reserved nineteen thousand five hundred shares of stock, representing and certifying to the purchasers that the price paid was full payment, and that the stock was fully paid stock. The truth of this representation and certificate was a contractual condition of the sale, which the stockholders — the real sellers — are equitably, and the corporation legally, bound to make good to the purchasers, unless the contract of sale was unlawful. No reason is perceived why the sale should be held unlawful. It is contended, however, that it was a violation of section 323 of the Civil Code, which provides that " all corporations for profit must issue certificates for stock when fully paid up, . . . . . and may provide, in their by-laws, for issuing certificates prior to the full pay-

ment, under such restrictions and for such purposes as their by-laws may provide."

This section does not prohibit the issuing of certificates before the stock is fully paid up. It enjoins the duty of issuing certificates for fully paid-up stock, and authorizes the stockholders to enact by-laws in accordance with which the corporation may issue certificates before full payment. While "it is true that the unanimous consent of the stockholders cannot cure the illegality of issuing certificates in violation of law," yet "the rule that a corporation is bound by an unauthorized act of its agents after the act has been ratified by all the stockholders applies to an unauthorized issue of certificates for shares." (Morawetz on Corporations, sec. 290.) In the case at bar there was more than a mere ratification by the stockholders. At a regular meeting of all the stockholders before the sale, the corporation was expressly authorized and directed to sell the reserved stock as fully paid stock for fifty cents per share. Article 10 of the by-laws required that each certificate of stock should state that the stock was fully paid, and the certificates issued on the sales of the reserved stock so stated. During a period of more than three years immediately after such sales and the issuance of such certificates, all the stockholders acquiesced therein. (See *Sayre* v. *Gas L. & H. Co.*, 69 Cal. 208; *Des Moines Gas Co.* v. *West*, 50 Iowa, 25; *Goff* v. *H. P. & W. Co.*, 62 Iowa, 691; *St. C. L. Co.* v. *Mittlestadt* 43 Minn. 91; *Walburn* v. *Chenault*, 43 Kan. 352.)

The plaintiffs, as against the corporation and the holders of the stock sold for cash, are estopped from denying that the price paid (fifty cents per share) for the reserved stock was full payment, and from asserting that the holders of that stock are indebted to the corporation for the difference between the price paid and the par value, by the terms of the contract of sale made pursuant to their order, and evidenced by certificates issued in accordance with a by-law enacted by them, upon the faith of which the purchasers appear to have relied and acted in good faith in paying the purchase price and

two subsequent assessments, in all which the plaintiffs acquiesced during a period of three years. (Morawetz on Corporations, secs. 630 et seq.)

The finding that the stock was fully paid stock — construed to mean that the purchase price was fully paid, and that the purchasers were not indebted to the corporation for the difference between the price paid and the par value — is fully justified by the evidence, and is not inconsistent with the finding that all the stock was sold and paid for at fifty cents per share. The authorities above cited show that when, by consent of all the stockholders, stock is sold by the corporation for less than its par value, it is to be considered as fully paid-up stock, in the sense above stated; and it is manifestly in this legal sense only that the court found all the stock to be fully paid-up stock, and not in the sense that the full par value had been paid.

In no aspect of the case is the appellant entitled to complain of the assessment in question, nor has he been injured thereby.

I think the judgment and order should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are affirmed.

McFARLAND, J., SHARPSTEIN, J.

DE HAVEN, J., concurring. — I concur in the judgment affirming the judgment and order appealed from.

Hearing in Bank denied.