(April 19, 1909.)

## THOMAS WALL, Appellant, v. THE BASIN MINING COMPANY, LTD., a Corporation, T. N. BARNARD and A. H. FEATHERSTONE, Respondents.

[101 Pac. 733.]

CONSTITUTION — CORPORATION — ASSESSMENTS — PERSONAL LIABILITY — FULL PAID CAPITAL STOCK—CONTRACTS—NONASSESSABLE STOCK.

1. Sec. 17, art. 11 of the constitution of this state, which provides: "Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him," relates to and limits the personal liability of a stockholder, but in no way limits the power of the corporation to make assessments upon stock fully paid up, and to subject such stock to sale in default of the payment of such assessment.

2. Rev. Codes, sec. 2750, empowers the directors of a corporation to levy and collect assessments upon the subscribed capital stock thereof for the purpose of paying obligations, conducting business, or paying debts, after one-fourth of the same has been subscribed.

3. The word "assessment" and the words "call" or "instalments" are used interchangeably in the statute, yet, strictly speaking, the word "assessment" means a demand upon stockholders for payments above the par value of their stock to meet the money demands of creditors of the corporation; while the word "call" or "instalments" means the action of the board of directors of the corporation demanding the payment of all or a portion of unpaid subscriptions.

4. Rev. Codes, sec. 2769, grants power to a corporation to admit stockholders or members, and to sell the stock or shares for the payment of assessments or instalments.

5. The word "assessments," as used in this section, is distinguished from "calls" or "instalments," and means assessments upon full paid stock, as distinguished from calls or instalments for portions of unpaid subscriptions.

6. The statutes of this state clearly empower a corporation to levy assessments or calls for instalments for unpaid portions of the subscribed capital stock; and also to levy assessments upon full paid-up stock for the purposes enumerated in the statute.

7. The levy of assessments, under the statutes of this state, against stock fully paid up is a proceeding *in rem*, by which the stock may

be sold, but no personal liability attaches to the stockholder for any deficiency arising from the sale.

8. If, however, the assessment be in the nature of a call for the unpaid portion of the par value, the corporation may elect to waive the sale and proceed by action to recover the amount of the assessment.

9. Where a corporation issues certificates of stock and prints thereon, as a part thereof, the words "nonassessable," such words become matters of agreement and a part of the contract between the corporation and the stockholder, and may be enforced by the stockholder against the corporation's right to assess such stock.

10. There is no provision of law in this state which prohibits a corporation from making a contract with its stockholders, by which it agrees that the stock issued is nonassessable, so as to preclude the stockholder from enforcing such contract against the corporation's right to assess such stock.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for the County of Shoshone. Hon. W. W. Woods, Judge.

An action to establish the plaintiff's right as a stockholder in the defendant corporation. Judgment for defendant. Plaintiff appeals. *Reversed.*

Myron A. Folsom and Henry P. Knight, for Appellant.

The only state constitution which has a provision concerning the liability of stockholders exactly like that of Idaho is that of Missouri, as amended in 1870. As our court has never construed the constitution of Idaho, it becomes of prime importance to examine the construction given the Missouri constitution by the courts of that state. (*Schricker v. Ridings*, 65 Mo. 208; *Ochiltree v. Iowa Ry. Co.*, 21 Wall. 249, 22 L. ed. 546.)

The statute which is claimed by the respondent to authorize the assessment of paid-up stock was found in Rev. Stat. of 1887, sec. 2614, etc., and in our new Civil Code, sec. 2750. That statute was adopted by the territorial legislature from California. The California supreme court had construed the statute as providing for unlimited liability to as-

sessment. (*Santa Cruz R. Co. v. Spreckles*, 65 Cal. 193, 3 Pac. 661.) A similar statute was adopted in Utah. But the *constitution* of California provided an unlimited liability of stockholders, and the Utah *constitution* contains no provision whatever upon the subject. The supreme court of this state in *Sparks v. Lower Payette Co.*, 3 Ida. 306, 29 Pac. 134, construed the statute above referred to and held it authorized assessments beyond the par value of the stock. In this the court adopted the California construction. The controversy arose before the constitution took effect, and therefore the court was not called upon to construe the constitution, and was fully authorized to adopt the California construction of the territorial statute. Neither did the later case of *Hall v. Eagle Rock Co.*, 5 Ida. 551, 51 Pac. 110, require the application of the constitutional provision because the complaining stockholders became such prior to the adoption of the constitution. In our constitution, we find an express declaration that the dues shall not be called upon stock which has been paid for in full. This constitutional provision cannot be added to by statute. (*Van Pelt v. Gardner*, 54 Neb. 701, 75 N. W. 874.) It follows that since the adoption of the constitution of Idaho fully paid stock cannot be assessed for any purpose, and the territorial statute on that subject is superseded.

It is therefore entirely proper for a corporation to issue nonassessable stock provided it has been fully paid. As between the corporation and its stockholders, even if the stock had not been fully paid, the corporation would have the right to issue stock which is nonassessable. (*Dickerman v. Northern Trust Co.*, 176 U. S. 181, 20 Sup. Ct. 311, 42 L. ed. 423; *Scoville v. Thayer*, 105 U. S. 143, 26 L. ed. 968; *First Nat. Bank v. Gustin etc. Min. Co.*, 42 Minn. 327, 18 Am. St. 510, 44 N. W. 198, 6 L. R. A. 676; Cook on Corporations, secs. 241, 242; *Price's Appeal*, 106 Pa. 421.) As between a corporation and its stockholders, the corporation may waive its right to assess stock, and such waiver is binding, and this is so whether the stock has been fully paid or not. (*Scovill v. Thayer, supra; Dickerman v. Northern Trust Co., supra;*

*First National Bank v. Gustin, supra; Enterprise Ditch Co. v. Moffitt,* 58 Neb. 642, 76 Am. St. 122, 79 N. W. 560, 45 L. R. A. 647; *Bent v. Underdown,* 156 Ind. 516, 60 N. E. 307; *Brant v. Ehlen,* 59 Md. 1; *Price's Appeal, supra; Gary v. York Min. Co.,* 9 Utah, 464, 35 Pac. 494; *Garey v. St. Joe Co.,* 32 Utah, 497, 91 Pac. 369, 12 L. R. A., N. S., 554.)

The mere fact that a certificate says upon its face that it is nonassessable makes it so, as against the company.

John P. Gray, Featherstone & Fox, and Therrett Towles, for Respondents.

This court in *Hall v. Eagle Rock etc.,* 5 Ida. 556, 51 Pac. 110, draws the distinction which counsel for the appellant has entirely disregarded. Referring to the act of 1891 amending sec. 2609, Rev. Stat., it says: "That act refers to the *personal liability of stockholders* and not to the *liability of stock to assessments* made, and necessary only to carry out the purpose for which the corporation was created or to preserve its property."

In *Willis v. Mabon,* 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281, in construing the constitution of Minnesota, somewhat similar to our own constitution, the supreme court of that state holds the provision imposes a personal liability over and above the loss of the stock, but draws the distinction which is controlling in this case. (See, also, *Delano v. Butler,* 118 U. S. 634, 7 Sup. Ct. 39, 30 L. ed. 260; *Hulitt v. Bell,* 85 Fed. 98.)

For almost nineteen years the constitution of Idaho has been in force, and never before has the right to levy such an assessment been questioned. Hundreds of corporations have levied similar assessments and have sold the delinquent stock, and the bench, the bar and the citizenship of the state have countenanced and upheld their right to do so during all these years. The decisions of this court in both the Sparks and the Hall cases, and particularly the latter, announce the doctrine that such assessments do not come within the provisions governing the personal liability of stockholders, but are assessments upon the stock itself, which may be levied

and collected by the sale of the stock for the purpose pointed out in the statute, and, like assessments under the national bank act, they do not in anywise affect, and are not referable to, the personal liability of the stockholder. The supreme court of California has repeatedly held that assessments upon fully paid stock under similar statutory provisions may be levied and collected. (*Santa Cruz R. Co. v. Spreckles*, 65 Cal. 193, 3 Pac. 661; *Green v. Abietine Medical Co.*, 96 Cal. 322, 31 Pac. 100; *Alta Silver Mining Co. v. Alta Placer M. Co.*, 78 Cal. 629, 21 Pac. 373.)

There is no statute of Idaho fixing the liability of stockholders of corporations which do not attach the word "limited" to their corporate names; therefore their liability is governed by the common-law rule, which common-law rule is that after the stock of the corporation was fully paid it was not liable to further assessment. (Cook on Corporations, 4th ed., 242; 10 Cyc. 649.)

The policy of the law is to prevent a corporation or its stockholders from varying the liability of the corporation, the shareholders, or its stock, by decreasing the same in any way. Where the governing statute imposes upon fully paid stock liability for subsequent assessments, the stockholders cannot vary that liability by abrogating those provisions of the statute. (*Gary v. York Mining Co.*, 9 Utah, 464, 35 Pac. 494; *Nelson v. Keith-O'Brien Co.*, 32 Utah, 396, 91 Pac. 30; *Jones v. Bonanza Mining & Milling Co.*, 32 Utah, 440, 91 Pac. 273.)

The mere fact that a certificate says upon its face that it is nonassessable does not make it so. (*Lowery v. Inman*, 46 N. Y. 120; *Conklin v. Second Nat. Bank*, 45 N. Y. 655.)

STEWART, J.—The facts in this case are stipulated and in substance are as follows:

The respondent, the Basin Mining Company, Ltd., is and, during all the times mentioned in this controversy, was a corporation organized under the laws of the state of Idaho. The respondent was organized with a capital of $1,500,000, divided into 1,500,000 shares of the par value of one dollar

each; that all of said stock was upon the organization of the company transferred and delivered to the owners of certain mining property in full payment for the mining property conveyed to the corporation, and the property was accepted by the corporation as full payment for the said capital stock; and certificates of stock were ordered issued by the corporation to the said owners of the mining properties conveyed; that thereafter 500,000 shares of said stock were donated to the treasury of said company by the stockholders, to be sold or otherwise used by the company for the purpose of developing the property; that the appellant herein entered into an agreement with the respondent, whereby the respondent agreed to sell and deliver to the appellant 40,000 shares of the treasury stock in payment of certain labor and development work to be performed by the appellant; that such work was performed, accepted by the respondent, and the respondent thereupon delivered to the appellant certificates Nos. 35, 37 and 77, aggregating 20,750 shares, and that the balance of said 40,000 shares was issued directly from the treasury to an assignee of the appellant; that all certificates issued to the appellant were issued in the same form as issued to all other persons and stockholders; that neither the articles of incorporation nor the by-laws contain any provision with respect to the stock of the said company being assessable or nonassessable, and the same was not so made by any express resolution or action of the directors or stockholders of the company.

In September, 1905, the respondent borrowed $1,500, for the purpose of patenting the mining claims owned by the corporation, and executed a note therefor. On January 11, 1906, at a directors' meeting an assessment of one and one-quarter mills per share was levied upon the capital stock of the company by proper resolution passed by the board of directors for the purpose of paying said note. Such assessment not having been paid by the appellant, his stock was sold and purchased by one T. N. Barnard for the amount of such assessment.

The certificates of stock issued to appellant were in the following form:

"Number 37.

"Incorporated Under the Laws of the State of Idaho, 2750 Shares.

"THE BASIN MINING COMPANY, LTD.

"Capitalized $1,500,000.00.   ·

"Divided into 1,500,000 Shares of the Par Value of One Dollar per Share.

"Full Paid and Non-Assessable.

"This certifies that Thomas F. Wall is the owner of twenty-seven hundred fifty shares of the capital stock of the Basin Mining Company, Ltd., transferable only on the books of the corporation in person or by attorney on surrender of this certificate.

"In Witness Whereof, the President and Secretary have hereunto set their names and caused the seal of the corporation to be affixed at Wallace, Idaho, this 9th day of May, A. D., 1903.

"The Basin Mining Company, Limited, corporate seal, Wallace, Idaho.

"JNO. P. GRAY, President.
"L. C. WILSON, Secretary."

The sole question presented on this appeal is: Was the appellant's stock subject to assessment and sale?

This inquiry may be subdivided into two parts: First. Under the constitution and laws of this state, can fully paid-up stock in a corporation be assessed? Second: Does the fact that certificates of stock bear upon their face, the words "full paid up and nonassessable," render shares—represented by such certificates, which have been fully paid up—nonassessable?

Before entering into a discussion of the questions involved in this case, we may well observe that the controversy arises between the corporation and a stockholder; and the rights of creditors, or the liability of a stockholder to a creditor, are in no way involved.

Under the common law full paid-up stock could not be assessed, and we believe it is now accepted as the general

doctrine by the courts of this country that in the absence of statutory authority, or power given by the articles of incorporation, there can be no assessment against or on the paid-up stock of a corporation. To warrant the respondent, therefore, in making an assessment against the stock of the appellant, which it is conceded was fully paid-up, the authority to make such assessment must be found in either the statute or the constitution of this state, or the provisions of the articles of incorporation of the respondent company. (2 Clark & Marshall, Priv. Corp., secs. 402, 403; 1 Purdy's Beach on Priv. Corp., sec. 325; *Enterprise Ditch Co. v. Moffitt,* 58 Neb. 642, 76 Am. St. 122, 79 N. W. 560, 45 L. R. A. 647.)

The position of the respective counsel may be stated as follows:

It is contended upon the part of appellant that the constitution of this state (sec. 17, art. 11) limits the liability of a stockholder in a corporation to the unpaid part of the par value of the stock, and by reason of such constitutional provision the legislature has no authority to enact any law which authorizes or permits stock of a corporation to be assessed, except as provided in this constitutional provision; and that a statute which authorizes or permits fully paid-up stock to be assessed is in violation of such constitutional provision. Upon the other hand, respondent contends that the above referred to provision of the constitution relates to and limits the personal liability of a stockholder, and does not relate to or affect the liability of stock to sale for assessments. In other words, that the liability referred to in the constitution is a personal liability, while the assessment made against stock under the statute is an assessment *in rem,* and upon stock fully paid does not create a personal liability of the stockholder, and for that reason does not fall within the limitation fixed by the constitution; that sec. 2750, Rev. Codes, authorizes and empowers corporations to assess fully paid-up stock, and in default of payment the subsequent sections authorize and provide for the sale therefor.

Sec. 17, art. 11 of the constitution, reads as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him."

This section of the constitution seems to clearly authorize the legislature of the state to provide the method and means by which dues from private corporations may be collected and secured, but limits the personal liability of the stockholder in the collection of such dues to the amount of stock owned by him.

The state of Missouri has a constitutional provision identical with this state (Mo. Const., art. 12, sec. 9); and in the case of *Schricker v. Ridings,* 65 Mo. 208, the supreme court of that state in construing the meaning of this constitutional provision holds:

"The key to the true interpretation of the amendment of 1870 is to be found, we think, in the negative form of expression therein employed. If the object of the provision had been to create an individual liability to the amount of the stock owned by any shareholder, that purpose would undoubtedly have been declared in express and affirmative terms, and not by way of mere inference from a negative and prohibitory form of expression. If the amendment of 1870 had declared in express terms that every stockholder should be individually liable to the amount of the stock owned by him, it might well be argued on the authority of the cases cited by the plaintiff's counsel, that as they were already liable to the creditors of the corporation for the full amount of their stock, paid and unpaid, the constitution intended to provide further security for such creditors by superadding the individual liability of stockholders in a sum equal to the amount of their respective shares of stock. But such is not the nature of the provision, and the authorities cited are therefore inapplicable. The language of the amendment of 1870 should be construed with reference to the language of the section which it superseded, and when so considered all doubt as to its true construction will vanish. . . . .

The prohibition contained in the amendment was, 'in no case shall any stockholder be individually liable *in any amount,* over or above the amount of the stock owned by him or her'; that is, *in addition* to the amount of the stock owned by him or her. In other words, the identical liability which the constitution of 1865 declared should exist, the amendment of 1870 declared should no longer exist. No liability whatever was created by the amendment, but the liability created by the constitution of 1865 was, by the amendment, totally extinguished.''

This same provision of the Missouri constitution was under consideration by the supreme court of the United States in the case of *Ochiltree v. Iowa Ry. Co.,* 21 Wall. 249, 22 L. ed. 546, in which the supreme court held:

"It is quite apparent that considerations of public policy induced the adoption of the double liability clause in the constitution of 1865, and equally apparent that, in the minds of the framers of the amendment of 1870, this provision had operated injuriously to the interests of the state, and that sound policy dictated its repeal. It is not difficult to see, with this provision in force, that great public improvements, in some of the states of the Union at least, could not be successfully carried on. Instead of inviting capital it would repel it. There are few persons who would consent to take stock in such enterprises, if subject to the double liability provision.''

It will thus be seen that the supreme court of the state of Missouri and the supreme court of the United States, in construing a constitutional provision of the state of Missouri identical with that of Idaho, held that the limitation therein contained related to the personal liability of a stockholder, and fixed such personal liability at the amount of stock owned by a stockholder or the unpaid portion of the par value thereof, but we are unable to find any expression of the court in either of the above decisions which in any way indicates that an assessment made upon stock, fully paid up, could not be enforced against the stock assessed. On the contrary, in the Ochiltree case may be found expressions which

indicate that the court was of the opinion that while the constitution limited the personal liability, yet that such limitation would not affect the right to subject the stock to payment of the debts of the corporation, for it is said:

"This stock was paid for and risked in the general enterprise and, like other assets, liable for the debts of the company; but the plaintiff seeks to place upon the defendant a liability beyond this, which it cannot believe it meant to assume, as the law did not impose the liability upon it when the stock was taken."

If a corporation necessarily incurs an indebtedness in maintaining itself or preserving its property, it becomes legally bound to pay and discharge such indebtedness; and the only question of concern is: By what means shall such indebtedness be discharged? Shall the entire property be sold, or has the corporation power to levy an assessment upon its stock and thereby discharge such indebtedness? Certainly, a stockholder would lose no more by having his stock subjected to sale for nonpayment of assessments, than he would lose if the entire property owned by the corporation were sold for the payment of the same indebtedness; and we do not believe that it was the intention of the constitution to prohibit a corporation from levying assessments against full paid stock, and upon failure to pay the same, subjecting the stock to sale for the purpose of raising money to meet the obligations of such corporation, for if this cannot be done, a corporation often would be unable to prevent its entire capital from being sacrificed by sale, in order to discharge a small indebtedness, which might be discharged by an inconsequential assessment.

So we conclude that sec. 17, art. 11 of the constitution, relates to and limits the personal liability of a stockholder, but that it in no way limits the power of the corporation to make assessments upon stock fully paid up and subjecting such stock to sale for the purpose of discharging the obligations of such corporation. This conclusion, we think, is supported by the history of the legislation of this state in relation to a stockholder's liability in a corporation.

Prior to the adoption of the constitution, sec. 2609, Rev. Stat., made each stockholder of a corporation individually and personally liable for such portions of its debts and liabilities as the amount of stock or shares owned by him bore to the whole of the subscribed capital stock or shares of the corporation, and for a like purpose only of each debt or claim against the corporation.

On March 11, 1891, an act was approved which amended sec. 2609, and made such section conform to the provisions of the constitution, and fixed and limited the personal liability of a stockholder to the full amount unpaid upon the par or face value of the stock or shares owned by him. (Rev. Codes, sec. 2745.)

Thus it will be seen that the legislature placed a construction upon the constitutional provision above referred to in accordance with the decision of the supreme court of Missouri. This clearly appears because the section as amended in 1891 fixed the personal liability in accordance with the constitution of the state; but at such time, or subsequent thereto, the legislature in no way amended or altered the provisions of sec. 2750, Rev. Codes, which empowers the directors of a corporation to levy and collect assessments upon the subscribed capital stock thereof for the purpose of paying obligations, conducting business or paying debts after one-fourth of the same has been subscribed.

Strictly speaking, the word "assessment" means a demand upon stockholders for payments above the par value of their stock, to meet the money demands of creditors of the corporation; while the word "call" or "instalments," strictly speaking, means the action of the board of directors or corporation demanding the payment of all or a portion of unpaid subscriptions. These two words, however, are used interchangeably in the statute of this state and the strict legal distinction as herein given is not observed.

It does appear, however, that in Rev. Codes, sec. 2769, in enumerating the power granted to a corporation, the distinction above given is clearly recognized, and thereby indicates the power of a corporation to not only make assessments or

calls for instalments of unpaid subscriptions, but also assessments in the strict legal sense—that is, a demand upon stockholders for payments above the par value of their stock.

Subd. 7, Rev. Codes, sec. 2769, is as follows:

"Seventh.   To admit stockholders or members, and to sell their stock or shares for the payment of assessments or instalments."

This clearly indicates that the legislature recognized a distinction between instalments and assessments: The former, as applying to the portion of unpaid subscriptions, and the latter, to demands upon stock fully paid.   This section, in our opinion, is a recognition by the legislature of an intention to clearly provide for assessments upon full-paid stock as well as assessments for unpaid portions of subscriptions.

This court in the case of *Hall v. Eagle Rock etc. Co.*, 5 Ida. 551, held that the provisions of sec. 2609, Rev. Stat., as amended by the act of 1891 (which is now sec. 2745, Rev. Codes), applied only to the personal liability of stockholders, and did not apply to assessments made against stock which were necessary for the purpose of carrying on the business of the corporation or to preserve its property.   In that case counsel for the stockholder contended that sec. 2745 (now Rev. Codes) provided that the personal liability of the stockholder should be limited to the amount unpaid upon the par value of the capital stock.   The same contention was made which counsel for appellant maintain in this case, with reference to sec. 17, art. 11 of the constitution, and this court held that sec. 2745 referred to the personal liability of the stockholder and not to the liability of the stock to assessment.   If that construction was correct, as applied to the above section of the code, it would be correct also as applied to the above section of the constitution.   In that case the court said:

"Unless the paid-up stock of the corporations of the kind of the defendant can be assessed to meet the expense of keeping its property in repair, the utility of its property is lost. the purpose for which the corporation was organized is defeated, and the destruction of its property is only a question of a very short time."

In that case the stock was fully paid up, and the reason given in that case why a corporation should be able to assess paid-up stock applies with equal force to the case now under consideration. The respondent was a mining company. It owned mining claims. To secure title to such claims it was necessary to borrow money and execute a note therefor, and to pay such note it was necessary to make the assessment against the stock of the company. Without the power to make this assessment the entire property of the respondent would have been subjected to sale to pay such indebtedness; and the possibility of such property becoming of some value to such corporation and thereby benefiting the appellant as a stockholder would have been entirely lost. But as we view the statute, the right to assess paid-up stock of a corporation is not limited to a corporation organized for any particular purpose. Corporations organized under the general corporation laws of this state, for whatever purpose, are authorized and make their assessments, if at all, under the same statute; and this statute in no way limits the power to assess paid-up stock to corporations organized for any special purpose.

This latter case was decided in 1897; the assessment, the validity of which was involved in that case, was made in February, 1895.

Thus it will be seen that the facts of that case occurred and the decision was rendered after the adoption of the constitution of this state, and it clearly upholds the right of a corporation to assess fully paid-up stock.

Rev. Codes, secs. 2750, 2751 and 2752, are identical to sections found in the Code of California, and which were under consideration and applied by the supreme court of that state in the case of *Santa Cruz R. Co. v. Spreckles,* 65 Cal. 193, 3 Pac. 661, and the supreme court of that state said:

"Now, the first subdivision of sec. 332 (which is the same as section 2751, Revised Codes of this state) in terms declares that if the whole capital has not been paid up, and the corporation is unable to meet its liabilities or to satisfy the claims of its creditors, the assessment may be for the *full amount unpaid upon the capital stock.* Of course, when such

an assessment is collected, the stock upon which it is levied becomes fully paid for; yet, according to sec. 333 (which is the same as section 2752 of the Revised Codes of this state), another assessment may nevertheless be levied. And the reason for the rule thus prescribed by the legislature seems plain; for one of the purposes for which the directors of a corporation are, by sec. 331 (which is the same as sec. 2750, Rev. Codes of this state), authorized to levy an assessment, is the conducting of the business of the corporation. And when the full amount unpaid upon the subscribed capital stock is required to meet the liabilities of the corporation, if the business is to be further conducted, it would seem very reasonable to authorize another assessment. So, too, does it seem reasonable that other assessments should be authorized, when, for instance, the assessment which, by the first subdivision of sec. 332 is authorized to be levied for the full amount unpaid upon the capital stock subscribed, is insufficient to satisfy the claims of the creditors of the corporation. But, whether reasonable or unreasonable, the law is so written, as we understand it.

"Nor is it easy to believe that, had the legislature intended by the provisions of the code in question to authorize assessments only to the extent of the par value of the stock subscribed for,—in other words, to provide only for the calling in of the sums subscribed,—it would not have expressed that intention in appropriate language. It would have been an easy matter to have done so, and, as we shall presently see, when the codes were adopted there was standing upon the statute books an old act providing for that very thing. 'There are two classes of assessments,' says Potter, Corp. vol. 1, p. 323, 'made by corporations or by the directors thereof, one of which is more properly distinguished as "calls" made upon the subscriptions for shares within the amount of the unpaid sums upon the number of shares subscribed; the other, an assessment made upon the corporators, not merely as a part of their subscriptions, but to raise a sum of money beyond the amount of subscription for the use of the corporation to sustain its existence, to carry into use its cor-

porate powers and to enable it to exercise its corporate duties.' The power to call in the par value of the stock actually subscribed and agreed to be taken was a power incident to the corporation at common law, and the subscriber was liable to an action therefor. But, by the common law, the stock of the subscriber could not be forfeited or sold for the amount of the assessment levied for the unpaid portion of the subscription price. To authorize a sale of the stock even for that purpose statutory authority was necessary." (*Sparks v. Lower Payette Ditch Co.,* 3 Ida. 306, 29 Pac. 134; *Green v. Abietine Medical Co.,* 96 Cal. 322, 31 Pac. 100; *Turner v. Fidelity Loan Concern,* 2 Cal. App. 122, 83 Pac. 62. See, also, *Price's Appeal,* 106 Pa. 421; 1 Cook on Corp., sec. 241; 1 Purdy's Beach on Priv. Corp., sec. 337.)

We think, therefore, it clearly appears that the liability of a stockholder to answer personally out of his estate for the debts of a corporation is fixed by the constitution at the amount of stock owned by him; and that this provision of the constitution does not limit the power of a corporation to levy an assessment against stock fully paid up, and in default of payment, to subject such stock to sale. The levy of an assessment, under the statute of this state, against stock fully paid up is a proceeding *in rem* by which the stock may be sold; but no personal liability attaches to the stockholder for any deficiency arising from the sale. If, however, the assessment be in the nature of a call for the unpaid portion of the par value, then under the provisions of sec. 2768, Rev. Codes, the corporation may elect to waive the sale and proceed by action to recover the amount of the assessment. This section of the statute, however, must be construed in connection with the limitations of the constitution, the latter of which prohibits an action against a stockholder to recover an assessment upon stock fully paid. So, under the constitution and statute assessments may be made against stock to the amount thereof and collected either by sale or action. If the assessment, however, be made upon stock fully paid, then the remedy is alone against the stock

and strictly a proceeding *in rem* limited to the sale of the stock.

This brings us to the consideration of the second inquiry, that is: Does the fact that certificates of stock bear upon their face the words "full paid up and nonassessable" render shares, represented by such certificates which have been fully paid up, nonassessable?

The position of counsel for respondent upon this phase of the case is tersely stated in their brief as follows:

"We maintain, therefore, that where the governing statute imposes upon fully paid stock, liability for subsequent assessments, the stockholders cannot vary their liability by abrogating those provisions of the statute, and we do not believe that any sound authority can be cited to the court supporting the contrary doctrine."

In this connection we call attention to the fact that the controversy in this case arises between the corporation and a stockholder, that the rights of a creditor to enforce his claim against a stockholder, or the liability of a stockholder to a creditor for corporate debts is not involved. This distinction should be kept in mind in order to apply and distinguish the cases dealing with this subject and cited by counsel, for in the case under consideration the question to be determined is: Can a corporation agree with its stockholders that the stock issued by such corporation shall not be subject to assessment? That is: Can such an arrangement or agreement be made which is binding as between the corporation and the stockholder? Rev. Codes, sec. 2750, provides:

"The directors of any corporation formed or existing under the laws of this state, after one-fourth of its capital stock has been subscribed, may, for the purpose of paying expenses, conducting business or paying debts, levy and collect assessments upon the subscribed capital stock thereof, in the manner and form, and to the extent, herein provided."

As we have held, this section gives a corporation power to levy an assessment against capital stock fully paid up.

Counsel for respondent argue that the word ''may,'' as used in this section, means ''must''; and that the corporation *must* levy an assessment for the purpose of paying expenses, conducting business, or paying debts. This section of the statute is in the nature of a grant of power, and authorizes a corporation to make a levy and collect assessments for certain purposes; but it is not compulsory that the corporation do so. The corporation may conclude that it will be to its advantage and to the advantage of its stockholders to permit its corporate property to be sold to satisfy its debts, rather than to levy assessments and sell the corporate stock; and if the argument of counsel for respondent is correct and the word ''may'' means ''must,'' and the only course left to a creditor or a stockholder contracting with a corporation would be to enforce the mandatory duty thus conferred upon the corporation, the creditor and the stockholder, with whom the corporation had contracted, would thereby be denied their action at law; but such construction is not authorized by the language of the section. The purpose and intent of the legislature by enacting this statute was to confer upon the corporations the power to do the things therein enumerated.

The inquiry then arises: Does the fact that a certificate of stock, issued by a corporation, bears upon its face the words ''fully paid up and nonassessable'' amount to a contract between the corporation and the stockholder; and has the corporation power to make the same?

The power of a corporation to make a contract with a stockholder, with reference to the issuing of stock to such stockholder, has been considered in many cases by the courts of this country, and generally upheld. In the case of *Elyton L. Co. v. Birmingham W. & E. Co.*, 92 Ala. 407, 25 Am. St. 65, 9 So. 129, 12 L. R. A. 307, the supreme court of Alabama held:

''In this country, on the contrary, the best authorities maintain that arrangements to issue stock as full paid, though only partly paid for in fact, may be valid and binding between the company and its stockholders, and yet may be set

aside at the instance of creditors, and full payment on the stock enforced for the satisfaction of the debts of the corporation.''

In the case of *Upton, Assignee, etc. v. Burnham,* 3 Biss. 520, Fed. Cas. No. 16,799, the court was instructing the jury with reference to the effect of the word "nonassessable" written or printed across the face of a stock certificate issued by the company, and said:

"As between the company and its stockholders this contract or agreement, expressed upon the face of the certificate, might be binding; but where necessity arises to collect the assets of the company for the purpose of discharging its liabilities, then the obligation of the stockholders to pay whatever remains unpaid arises."

In the case of *Scovill v. Thayer,* 105 U. S. 143, 26 L. ed. 968, the supreme court of the United States, in passing upon this question, held:

"'The stock held by the defendant in error was evidenced by certificates of full paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company this was a perfectly valid agreement. It was not forbidden by the charter of the company or by any law or public policy, and as between the company and its stockholders was just as binding as if it had been expressly authorized by the charter."

To the same effect is *Handley v. Stutz,* 139 U. S. 417, 11 Sup. Ct. 530, 35 L. ed. 227.

In the case of *Dickerman v. Northern Trust Co.,* 176 U. S. 181, 20 Sup. Ct. 311, 44 L. ed. 423, the supreme court of the United States again had occasion to discuss this question and said:

"In addition to this, however, the contract with Stein provided that the stock to be issued to him should declare upon the face of the certificates to be fully paid and unassessable, and we know of no principle upon which it can be held that

innocent bondholders can be required to deduct from the face of their bonds the amount unpaid upon their stock. The very authorities which hold that the declaration that the stock is fully paid and unassessable is not binding upon creditors, also hold that the corporation cannot repudiate it and proceed to collect either from the person receiving the stock or his transferee the unpaid part of the par value.''

The court then quotes with approval the extract above given from the case of *Scovill v. Thayer* and continues:

''There is no doubt that, if this were a suit by creditors to enforce payment of the unpaid portion of the stock subscription, the fact that the stock certificates declared that they were fully paid and unassessable would be no defense; but it is a suit of stockholders in the right of the corporation, and as between the corporation and its stockholders the declaration that the shares are fully paid up and unassessable is a valid one.''

Our attention has not been directed to any statutory provision, and we know of none, which prohibits the articles of incorporation from containing a provision to the effect that the stock issued by the corporation is ''nonassessable.'' Neither is there any provision of the statute which would prohibit a corporation from so providing in its by-laws. The effect of such provision would be in the nature of an agreement between the stockholders of the corporation and between the stockholders and the corporation, to the effect that the corporate stock of such corporation could not be ''assessed,'' thereby agreeing that if obligations of the corporation were to be discharged and the corporation did not have the money with which to pay the same, then the corporate property should be subjected to and applied in discharge of such indebtedness instead of raising the same by assessment against the stock. So, when the corporation certifies that the shares represented by a certificate are ''nonassessable,'' such provision becomes a part of the contract between the corporation and the stockholder, and as between the corporation and stockholder such agreement may be relied upon and enforced.

The, stipulated facts show that 500,000 shares of the capital stock of the respondent corporation were donated by the respective stockholders to the treasury to be sold or otherwise used by the corporation for the purpose of developing its property. The appellant's stock was a part of this treasury stock, and issued to him as full paid up, for labor performed in developing the respondent's property. It does not appear that any more of the treasury stock was disposed of. If this be true, then there was in the treasury 460,000 shares of the par value of one dollar each, which were subject to disposition by the corporation for the purpose of developing its property. This stock might have been sold and money realized with which to pay the expense for which the assessment complained of was made. The fact that the stockholders voluntarily donated to the treasury 500,000 shares of stock would seem to confirm the intention of the corporation in issuing the certificates, containing the provision "nonassessable," to make the shares represented by such certificates in fact "nonassessable."

It was no doubt the purpose of the corporation and the stockholders in donating this stock to provide the treasury with sufficient stock to meet the necessary expenses and obligations of the corporation, and thereby make it unnecessary to make any assessment upon the stock issued by the corporation; and this may have been the reason for making the certificates read "nonassessable." When the corporation issued its stock and incorporated in the certificates the statement "nonassessable," it certainly did so for some purpose, and that purpose, it would seem, clearly appears from the certificate, that is, that the corporation represented and certified to prospective purchasers that the stock was in fact not subject to assessment. By such certificate the corporation so represented to the appellant and the appellant no doubt accepted such stock in payment of his services, with the understanding and agreement that the value of his services amounted to the full par value of such stock; and that the company waived the right to levy any assessment against the same. If the words "non-assessable," when contained in

a stock certificate, are not matters of substance and agreement and within the power of the corporation to make, then they are meaningless, and can only be used by the corporation to allure the unsuspecting investor into parting with his money, receiving in return a certificate which falsely represents the nature and character of the stock purchased.

The argument urged by counsel for respondent and recognized by many authorities, that such provision would be a fraud upon the creditors, has no controlling force in this state, for the reason that a stockholder is not personally liable under the constitution, except for the amount of stock for which he has subscribed, and if the stock subscribed has been fully paid, the personal liability ceases, and the creditor would have no right of action against a stockholder for any assessment made in excess of the amount of stock owned, and can only resort to the corporate property to satisfy his claim; but even if it be admitted that an arrangement or contract between the stockholders of a corporation, by which it is provided that stock is not assessable, would be void as against creditors, still there is no provision of law which prohibits such contract being entered into and binding the parties thereto, the stockholder and the corporation.

It is also argued that if the corporation is without power to assess full paid-up stock, then the corporate property would be subject to sale, and by such sale the corporation and the stockholders might lose the entire corporate property and their stock be rendered entirely worthless. This question has received a very careful consideration by the supreme court of Utah in the case of *Garey v. St. Joe Mining Co.*, 32 Utah, 497, 91 Pac. 369, 12 L. R. A., N. S., 554, in which the court says:

"The argument points to matters of mere utility, not to the rights of the stockholders. Whether an execution sale of the corporate property in satisfaction of corporate debts may or may not produce a more serious result than enforcing contributions from the corporate members, is beside the question. Every stockholder has a vested equity in and to the assets of the corporation. The value of his equity is depend-

ent upon the value of corporate assets and the extent of corporate liabilities. Dependent upon such facts, the value of his equity may be much or little. But, whatever it may be, his right to participate in the distribution of the assets, when the corporate property has been sold on execution, is not disturbed, nor is he compelled to personally contribute to the payment of the corporate debts. So, if a corporation becomes insolvent, it may go into liquidation; but the individual members and stockholders are not bound to pay such indebtedness, except out of the assets. . . . . It may be true, as was suggested by counsel, that in many instances it may be wise and expedient for corporators to make additional contributions of capital to discharge corporate indebtedness, so as to preserve the corporate property, or to make such contributions for the successful conduct of the business. But that is something which the corporators should consider when they make their contracts. Courts are organized to enforce contracts as made, unless they contravene good morals or public policy. They cannot create new contracts, nor can they permit the parties themselves to do so without the consent of all, upon any theory that the original contract was not the most beneficial or advantageous, or that the enterprise contemplated by the terms of the contract cannot be successfully operated under it. By their solemn agreement the parties have here defined and limited their contributions of capital to the corporation for corporate purposes.''

To the foregoing reasons it may be added that it may have been the intention and purpose of the incorporators and the purchasers of stock to provide, that in case an indebtedness of the corporation was incurred and the property was unremunerative, then the assets alone of such property should be subjected to the discharge and payment of such indebtedness. There is nothing in the statute which would indicate any limitation upon the power of a corporation to make such a contract, and as long as such contract is not prohibited by law, it is an incident of the corporate power; and the corporation and the stockholder have the right to contract with reference to the method and means by which the obligations

of the corporation may be discharged, and there appears no reason why such contract should not be enforceable both against the corporation and the stockholder.

Counsel for respondent calls our attention to the case of *Lowry v. Inman*, 46 N. Y. 119, as supporting its contention. This case involved the personal liability of stockholders for a judgment obtained against the corporation. The rights of creditors were directly involved. We are also cited to the case of *Conklin v. Second Nat. Bank of Oswego*, 45 N. Y. 655. In that case, however, the court held that· a recital in a certificate of stock was void on the ground that the rights and liabilities of the stockholder were controlled by law, and the certificate could not change the liability fixed by law.

Counsel also direct our attention to the case of *Gary v. York Min. Co.*, 9 Utah, 464, 35 Pac. 494. By the articles of incorporation in that case it was provided that 50,000 shares should be set apart and used in developing its mine, and that no assessments should be levied on any of the stock for any purpose until the stock so set apart should be exhausted. Without selling the 50,000 shares an assessment was levied upon the subscribed stock and the plaintiff's stock was sold to pay such assessment and purchased by the company.

The question was: First, whether the capital stock of the corporation was subject to assessment; and second, whether such assessment could be made until after the 50,000 shares set apart had been sold.

In answer to the first inquiry the court held that the corporation had the legal right to make the assessment; and upon the second point the court holds:

"The articles did provide that no assessment should be made until the working capital should be exhausted. We incline to the opinion that this provision was binding on the directors. But the evidence in the record shows that they were unable to convert it into money; that they were unable to sell the stock so reserved, and apply it to the payment of the debts of the corporation."

Thus it will be seen that in this case the court upheld a provision contained in the articles of incorporation, that no assessment should be made against the stock until the treasury stock was sold. In other words, the power of the corporation to make a contract with reference to levying an assessment is upheld. This case in principle supports the contention of the appellant. It is followed and approved in the case of *Nelson v. Keith-O'Brien Co.*, 32 Utah, 396, 91 Pac. 30, and *Jones v. Bonanza Min. & Milling Co.*, 32 Utah, 440, 91 Pac. 273. From the latter case we have heretofore quoted at length upon another phase of this case.

From what has heretofore been said, it follows that the judgment in this case must be *reversed*, and the cause is remanded and the trial court is directed to make findings and enter judgment in accordance with directions herein expressed. Costs awarded to *appellant*.

Sullivan, C. J., concurs.

AILSHIE, J., Concurring.—I concur in the reversal of the judgment on the ground and for the reasons set forth in the opinion of Justice Stewart, to the effect that the corporation, having contracted with the stockholder that his stock should be nonassessable, is now bound by that contract, and had no power or authority to subsequently levy the assessment in question. This is sufficient reason for a reversal of the judgment, whether or not the power exists under the constitution to levy assessments at all on fully paid stock. On the latter proposition I express no opinion.

In reserving my opinion on this point, I think it proper to say at this time that in my judgment neither the case of *Sparks v. Lower Payette Ditch Co.*, 3 Ida. 306, 29 Pac. 134, nor the case of *Hall v. Eagle Rock Co.*, 5 Ida. 551, 51 Pac. 110, is authority in support of the proposition that fully paid-up stock is subject to assessment under the provisions of sec. 17, art. 11 of the constitution. Both of those cases involved the assessment of stock issued prior to the adoption of the constitution by corporations that had been formed

under the territorial statutes. The Sparks case involved a construction of the act of 1875, and the provisions and amendments incorporated in the 1887 statute, all of which were enacted by the territorial legislature. The Hall case also involved a construction of the 1887 statute and applied to the issue of stock made in 1888 by a corporation that was formed in 1884.

These opinions are in no sense authority for the proposition for which they are cited. Neither does the extract from *Ochiltree v. Railroad Co.*, 21 Wall. 249, 22 L. ed. 546, support the contention for which it is cited. On the contrary, that case holds that the liability of a subscriber to stock in a corporation is measured by the law in force at the time of the contract of subscription. The only constitutional provision to be found in any state like ours, to which my attention has been called, is that of Missouri. On the other hand, my attention has not been called to any case that is, to my mind, authority on this question either the one way or the other. It not being essential to pass on the right of a corporation to assess fully paid-up stock in the absence of any contract not to do so, I therefore reserve my judgment on that point.